[Civ. No. 610.    Third Appellate District.—October 4, 1909.]

## C. E. RUSSELL, Appellant, v. JAMES A. BANKS and THOMAS N. HALE, Respondents.

APPEAL—ALTERNATIVE METHOD—FAILURE TO FILE UNDERTAKING—JURISDICTION.—An appeal taken after the passage of the act of 1907 (Stats. 1907, p. 750), though intended to be pursued as matter of form under the old method, which is not repealed, will, nevertheless, give jurisdiction under the new method by the filing of the notice of appeal, though no undertaking on the appeal is filed.

ID.—REVIEW ON APPEAL FROM JUDGMENT—INSUFFICIENCY OF EVIDENCE.—When an appeal from the judgment is taken within sixty days after its entry, the insufficiency of the evidence to sustain the findings may be reviewed under a proper bill of exceptions.

ID.—ACTION UPON LEASE AGAINST ASSIGNEES—BURDEN OF PROOF—SUPPORT OF FINDING—EMPLOYMENT BY SURVIVING PARTNERS OF LESSEE.—In an action for rent against alleged assignees of the term of a lease, the burden of proof is upon the plaintiff to prove the assignment of the term to the defendants and their attornment to him as lessor in the payment of rent; and where there is some evidence to the contrary, and to show that defendants were mere employees of a surviving partner of the original lessee, and paid rent only as directed by him at a specified store for plaintiff, and ceased paying the same at his direction, and that they had no personal dealings with the lessor, it cannot be said, as matter of law, that a finding for the defendants is unsupported.

ID.—MERE PAYMENT OF RENT NOT ESTOPPING DEFENDANTS.—The mere payment of rent by the occupant of the premises, under the circumstances, did not estop the defendants from denying the relation of landlord and tenant between them and the lessor, since there is no showing that defendants represented to the lessor that they were in possession under the lease, or misled him in any way to his injury; but it affirmatively appears that said payment was made under an arrangement with the surviving partner of the lessee, irrespective of the lease.

ID.—CONTRACT NOT EXPRESSLY FOR BENEFIT OF LESSOR.—The contract between the surviving partner of the lessee and the defendants cannot be sustained as a contract made expressly for the benefit of the lessor, under section 1559 of the Civil Code; since, under the finding made, upon sufficient evidence, the employment effected between the parties thereto was for their own exclusive benefit.

APPEAL from a judgment of the Superior Court of Mendocino County.    M. S. Sayre, Judge presiding.

The facts are stated in the opinion of the court.

J. W. Preston, for Appellant.

Robert Duncan, for Respondents.

HART, J.—The complaint alleges that the defendants are indebted to the plaintiff in the sum of $873 under the terms of a certain lease executed by said plaintiff to one N. J. Waymire, and prays for judgment for that sum.

The cause was tried by the court without a jury, and judgment against the plaintiff and in favor of the defendants for costs was rendered and caused to be entered by the court.

The plaintiff appeals from said judgment, on a bill of exceptions.

Respondents first object to the consideration of this appeal upon the alleged ground that jurisdiction to do so has not been conferred because of the failure of the appellant to file an undertaking on appeal, citing sections 940 and 953 of the Code of Civil Procedure and the case of *Pacific Mutual Life Ins. Co.* v. *Edgar*, 132 Cal. 197, [64 Pac. 260].

But since the decision in the case cited the legislature of 1907 (Stats. 1907, p. 750) has provided a new method of taking appeals to the supreme and district courts of appeal, and thereunder it is not necessary, as under the old method, in order to perfect such appeals, to file an undertaking guaranteeing the payment by the appellant of all damages and costs which may be awarded against him on the appeal, or in lieu thereof to deposit with the clerk the sum required by the statute. And in *Mitchell* v. *Cal. & O. S. S. Co.*, 154 Cal. 731, [99 Pac. 202], our supreme court, dealing with the new or alternative method of taking appeals, says that, while the later did not repeal the old method by which the filing of a bond for costs is required, it is sufficient if an appeal is perfected under either method; ''and hence [quoting from the syllabi] though a party did not file a sufficient undertaking for costs, as required by the old method, but filed his notice of appeal which was sufficient under the new method, the appellate court obtained jurisdiction, though the party intended to pursue the old method.''

Here the appellant has, evidently, so far as the form of the record is concerned, taken his appeal under the former exclusive method, and, although no appeal bond was filed,

this is sufficient under the alternative method recently adopted by the legislature, according to the ruling in the case referred to.

There are some other technical objections to a review of the bill of exceptions, but they are not of sufficient importance to require special notice. It may, however, be remarked that the appeal here was taken within sixty days after the entry of the judgment, and, therefore, the bill of exceptions may be considered on review of the point that the evidence does not support the findings upon which said judgment rests.

It appears from the record that on the third day of October, 1905, the plaintiff leased, by an instrument in writing, a certain dairy ranch, situated in Mendocino county, and the machinery thereon for conducting the dairy business, together with a number of milch cows, to one N. J. Waymire, for the term of one year, with a stipulation on the part of the plaintiff that at the expiration of said term he would renew said lease for the further term of four years. It was also stipulated in said lease that "this lease shall not be sold or transferred to any other party during the term of it without the written consent of the party of the first part"—that is, the plaintiff.

The complaint alleges and the evidence shows and the court finds that, notwithstanding the fact that the written lease indicated that said N. J. Waymire was the sole lessee, "the truth and fact was that the said lease was taken by and on behalf of a copartnership which then and there existed between the said N. J. Waymire and her son, G. C. Waymire."

Mrs. Waymire and her son, G. C. Waymire, entered into the possession of said dairy ranch and the stock, etc., under said lease, but, on the nineteenth day of February, 1906—approximately eight months prior to the expiration of the term fixed by said lease—Mrs. Waymire died, and, as the complaint alleges, "leaving as her sole surviving partner in the said lease the above named G. C. Waymire, her son." The complaint continues as follows:

"That on or about the said 1st day of March, 1906, and after the death of the said N. J. Waymire as aforesaid the said G. C. Waymire surviving partner as aforesaid acting in liquidation of the affairs of said copartnership did sell, assign, transfer and convey unto the defendants James A.

Banks and Thomas N. Hale the unexpired portion of the said lease so made and executed as aforesaid.

"That pursuant to said sale and transfer so made as aforesaid the said defendants James A. Banks and Thomas N. Hale entered into the possession of the said ranch together with the stock thereon and did use and enjoy the same for the greater part of the unexpired term of said lease to wit, from March 1st, 1906, to the 4th day of Sept., 1906, at which time the said defendants abandoned the said property and taking therefrom a large number of cattle and other personal property.

"That the plaintiff accepted the said defendants and each of them as tenants of said property under and by virtue of the said lease so made as aforesaid."

The complaint is unverified, and the answer denies generally each and every allegation in said complaint.

The court found from the evidence that said G. C. Waymire, as surviving partner of N. J. Waymire, deceased, and in the liquidation of the affairs of said copartnership, did not "sell, assign, transfer and convey" to the defendants the unexpired portion of said lease; that said defendants did not, pursuant to said alleged sale and transfer, enter into the possession of the said ranch, together with the stock thereon; that said defendants did not "use and enjoy the same for the greater part of the unexpired term of said lease, and that they did not on the fourth day of September, 1906, abandon said property or take from said ranch a large number of cattle and other personal property"; that "it is not true that the plaintiff accepted the said defendants or either of them as tenants of said property under and by virtue of said lease or otherwise or at all."

The principal contention upon the part of the appellant is that the respondents took possession of the demised premises under the lease executed to Mrs. Waymire and attorned to the appellant for a portion of the unexpired term; that the clause in the lease interdicting the assignment of said lease without the consent of the lessor being alone for the benefit of the latter, he could waive that right or benefit, and, having done so, an assignment of the lease took place by operation of law. There are some other suggestions offered by counsel with regard to the legal effect of the

alleged transfer of the possession of the demised premises to the defendants, but these will not require special notice.

The position of the respondents is that they were merely employed by G. C. Waymire to take charge of the ranch and the business connected therewith and manage the same for him.

Thus it will be observed that the only proposition involved in this controversy is, What is the legal effect of the transaction, as disclosed by the evidence, between G. C. Waymire and the respondents with respect to the property to which the lease relates? and, therefore, the sole question submitted here is, Are the findings of the court below justified by the evidence? We may say in the outset that we believe the findings are sufficiently supported, although it may be admitted that the evidence submitted by both the plaintiff and the defendants, as presented in the record before us, does not appear to be very clear or altogether satisfactory upon the question of what was in reality the legal nature of the transaction between G. C. Waymire and the respondents. But the burden was upon the plaintiff to prove the material allegations of his complaint, and this, according to the court's findings, he failed to do to the satisfaction of the trial court, and we cannot now say that the judge's conclusions from the evidence are, as a matter of law, unsupported by the proofs. He had the witnesses before him, heard and saw them testify, and was, of course, in a much better position to weigh the testimony than a reviewing court.

The plaintiff testified that in the month of March, 1906, after the death of Mrs. Waymire, he went to the ranch and found the defendant, Banks, in charge of the place. The latter was living on the ranch with his family. Banks said to the witness on that occasion that he [Banks] had made arrangements with Waymire to pay the rent and for six dead carcasses. "I found him [Banks] there in possession," plaintiff continued, "and as long as he was there and I received my rent, that was all I wanted." He said that he had received certain sums paid as rent under the lease after the death of Mrs. Waymire and after Banks and Hale "went into possession of the place." These sums, he declared, were deposited to his credit with the Irvine & Muir Co.'s store. In connection with this statement of the witness, it was admitted by counsel for the defendants that the sum of $178

was left at said store for the plaintiff by the defendants, but it was not admitted that said sum was so deposited as rent due from the defendants under the terms of the lease. Plaintiff further testified that the defendants left a keg of butter with Irvine & Muir to be applied as payment on the rent.

G. C. Waymire testified as a witness for the plaintiff, but his testimony throws no light whatever upon the nature of the arrangement between himself and the respondents relative to the leased property. He said that shortly after his mother's death, he left the "Russell ranch" (meaning the demised premises), and that he did not thereafter return to said ranch to remain permanently. "I never took possession of it any more," he continued. "Mr. Banks moved on the place and Mr. Hale was to help him. It was my understanding that Banks and Hale were jointly to take charge of the property. . . . I do not know who got the butter produced by the dairy cows. It was sold around there. After the death of my mother I do not know who sold the butter. I wasn't there. I never made any effort to retake possession of the place. After Banks and Hale moved away in September, I was first at Willits. I sent Mr. Russell word and then moved to Lake county. . . . I never had anything to do with the place after the first day of March, except that I was upon it a few times."

A witness testified that he worked for the respondents in the year 1906 on the "Russell ranch," and that during that time he had a talk with Banks concerning the terms upon which the latter was holding the property; that Banks then said that "he was to give $12 per head for cows and $10 per head for heifers, and that it would amount to about $100 per month. He said he was to keep it [the property] the rest of the time after Waymire had quit it."

The plaintiff introduced the deposition of the defendant Banks, whose testimony was, in part, as follows: "The trade that I made with Cleve was that we were to take the place and run it for him and we were to have the proceeds of the place over and above certain rents we were to pay. I do not remember how much money we were to pay Russell. We were to make such payments as Cleve Waymire told us to make.

"We were to pay the payments called for in the lease. They, the Waymires, were to make the old stock good. There were no wages set at all. We were to take the place and run it and pay the rent and have the proceeds of the place. . . .

"We did not stay on the place until the lease expired. We paid the rent until Cleve Waymire said we had paid more than was coming to Russell because the cows were not on the place that should have been there. We paid the rent until Cleve Waymire told us not to, but I cannot tell how much we paid. We didn't count the cattle on the place; we counted what milk cows we milked; there were about sixty-five and part of these were heifers.

"Cleve Waymire was at Willits when I left the place. I told him I was going to leave and for him to notify Russell and he did. I took the butter we sold off the place and took the forty-eight head of calves.

"There were no powers of attorney or other writings between me and Cleve Waymire or Ed Waymire; there was to have been though, when he was appointed administrator, but they never was appointed administrator."

The witness Clark, for the plaintiff, testified, no objection having been offered to his testimony, that Waymire stated to him that he [Waymire] had "rented the place to Banks and Hale and he also said he was going to make Russell believe that Banks and Hale were running the place for him, G. C. Waymire."

The foregoing represents the substance of the important testimony brought out by the plaintiff.

The cross-examination of plaintiff elicited the fact that, after the death of Mrs. Waymire, he procured the public administrator of Mendocino county to petition for and secure letters of administration upon her estate. Plaintiff was asked if he did not present a claim against said estate which contained the same items as those upon which this action was brought, and he replied in the affirmative, saying that the said claim "was actually the same as my bill of particulars furnished in this case." The claim as presented against the estate was received in evidence, and it shows that it was approved by the administrator of the estate and allowed and approved by the judge of the superior court on the sixteenth day of April, 1907. The present action was

begun on the thirteenth day of March, 1908, almost a year after the administrator and the judge had approved said claim. Why the claim was not paid by the administrator does not appear.

The plaintiff also admitted, upon cross-examination, that, at his instigation, the administrator of Mrs. Waymire's estate brought an action long prior to the institution of the present action against the defendants here to recover a certain number of head of calves which said defendants were alleged to have taken with them when they left the demised premises in September, 1906.

For the defendants, one Hotskin testified that he was present at the trial of said last-mentioned case, and heard the plaintiff here therein testify that he had found Banks and Hale on his property, but that he "had never had any dealings with them at all."

It will be noticed from the evidence, as we have briefly presented it here, that the only witness whose testimony reflects, in any degree, any light upon the nature of the arrangement between G. C. Waymire and the respondents concerning the demised premises is the defendant Banks. He stated that he and Hale were to manage the place and business for Waymire, for which services they were to receive such portion of the income from said business as might be in excess of the sum necessary to pay certain rents, and that they were to pay such rents only as G. C. Waymire directed them to do. Banks said that he was familiar with the provision in the written lease prohibiting the transfer or sale of the same by the lessee without the consent of the lessor, and that when he and Hale took charge of the premises for Waymire, they were fully aware of the fact that Waymire could not, without plaintiff's assent, transfer or assign to them said lease. The respondents, he said, continued to pay the rent, leaving the same with Irvine & Muir for the plaintiff, until Waymire directed them to cease making further payments for that purpose.

Waymire, while on the witness-stand, said nothing from which the conditions upon which Banks and Hale assumed control of the premises could definitely be inferred. His statement that his understanding was that the respondents "were jointly to take charge of the property" furnishes no definite information whether they were to do so under the

lease or merely as agents of himself. It may, indeed, well be considered a significant fact that G. C. Waymire, the only other person than Banks and Hale who could have thrown any light upon the nature of the arrangement between himself and the defendants with regard to the control or management of the property by the latter, was not asked a single question, so far as the record shows, which would lead to an explanation of the transaction, although called as a witness by the plaintiff. If he was questioned upon the proposition, he made no satisfactory explanation of the transaction, for about all that we find from the record that he did say upon the subject was, "it was my understanding that Banks and Hale were jointly to take charge of the property." Waymire, above all other persons, except the respondents, ought to have been able to give in the most definite manner the terms and conditions upon which he permitted Banks and Hale to assume charge of the property, and yet, as suggested, he was apparently not questioned very closely upon the proposition, or, if he was, he was not compelled, as we think he could have been, to make satisfactory answers. It is true that he was asked no questions on cross-examination, but, having testified to nothing on direct examination seriously militating against the position of the respondents upon the issue before the court, there was no necessity for a cross-examination. It was the duty of plaintiff, as before stated, to establish the claims of his complaint by satisfactory proof, and until he had made out a satisfactory case, there was no duty resting upon the defendants to reply or to cross-examine witnesses whose testimony had little tendency to sustain the averments of the complaint. We refer to this circumstance as illustrating the unsatisfactory showing made by plaintiff and in explanation of how the trial court, in weighing the testimony, could have justly rejected the contention of the plaintiff that Waymire had sold or transferred the lease to the respondents, and that they attorned to him according to the terms of the instrument.

The truth is that the plaintiff, up to the time of the institution of this action, so far as we are advised by the record, did not treat or recognize in any manner the respondents as his tenants or as the successors in interest of Waymire under the terms of the lease. He encouraged the bringing of an action by the administrator of the estate of Mrs. Waymire

against the respondents to recover certain stock which they took from the premises, claiming that said stock was still the property of the Waymires. Not only did he cause that action to be brought, but he testified therein that he never had had any dealings with the respondents, meaning, no doubt, that he did not place them in charge of the premises, nor recognize them as tenants after they assumed charge. Furthermore, he admitted that the items contained in the very account upon which he undertakes to sustain this action were included in a claim he filed in and against the estate of Mrs. Waymire, thus showing that up to that time he had not recognized or accepted the respondents as the tenants under the lease to the Waymires.

The respondents always paid the rent to Irvine & Muir, as directed by G. C. Waymire, and never had any personal dealings with the plaintiff during the time they were on the premises, and ceased paying rent when directed so to do by Waymire. The last named testified that when the respondents left the premises he notified the plaintiff of the fact.

We can perceive no reason for doubting that the evidence justifies the court's conclusion that Banks' statement to the effect that the respondents went upon the premises to manage the same for G. C. Waymire, and that there was no sale, transfer or assignment of the lease to them, is true. This being so, the relation of landlord and tenants between the plaintiff and the respondents is not shown, and this action cannot, therefore, be maintained.

We do not deem it necessary, in view of the conclusion we have reached as to the findings, to examine here the cases cited by the appellant in support of what he submits to be the law applicable to the facts as he understands them to be established by the evidence. We have no fault to find with the legal principles which he undertakes to invoke here. His difficulty, as we have seen, lies in what we deem to be a misconception of the effect of the evidence. His final proposition that, if there was not an assignment of the lease under any view of the evidence, the contract between Waymire and the respondents was, nevertheless, made expressly for his benefit, and that, therefore, under the terms of section 1559 of the Civil Code he is entitled to enforce it cannot, under the findings, be maintained, for if, as the court found, upon sufficient evidence we think, that there was nothing

more than an employment of the respondents by Waymire, then, obviously, the contract thus made between the parties was for their own benefit and for that of no other person.

There is no showing that the defendants ever told or in any way ever represented or held out to the plaintiff that they were in possession of the property under the lease, nor did they mislead him to his injury. As is said in *Canale* v. *Copello*, 137 Cal. 25, [69 Pac. 699], "that the defendants paid rent" did not create an estoppel against them. If they paid rent while occupying the premises, they only did what they agreed to do under their arrangement with G. C. Waymire and irrespective of the lease. (See *Fisher* v. *Slattery*, 75 Cal. 325, [17 Pac. 235]; *Canale* v. *Copello*, 137 Cal. 25, [69 Pac. 699]; *Gustafson* v. *Stockton & Tuolumne R. R. Co.*, 132 Cal. 619, [64 Pac. 992]; *Brown* v. *Curtis*, 128 Cal. 193, [60 Pac. 773].)

It follows from the foregoing that the judgment must be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.