[S. F. No. 14796. In Bank.—August 24, 1933.]

SAN MATEO PLANING MILL COMPANY (a Corporation), Respondent, v. DAVENPORT REALTY COMPANY, INC. (a Corporation), et al., Defendants; NORTH AMERICAN BUILDING–LOAN ASSOCIATION, Appellant.

SAN MATEO PLANING MILL COMPANY (a Corporation), Respondent, v. PENINSULA PROPERTIES COMPANY (a Corporation) et al., Defendants; NORTH AMERICAN BUILDING–LOAN ASSOCIATION, Appellant.

Fabius T. Finch and Paul F. Fratessa for Appellant.

Kirkbride, Wilson & Brooks and John D. Willard for Respondent.

CURTIS, J.—These two actions were instituted by the plaintiff against certain defendants who are the same in each action, although in the first action the Davenport Realty Company, Inc., is named as the first defendant, and in the second action the Peninsula Properties Company is named as the first defendant. The material defendants in each action are the Davenport Realty Company, Inc., the Pacific American Building-Loan Association (hereinafter referred to as

the Pacific American Association), and the North American Building-Loan Association (hereinafter referred to as the North American Association). In the first action plaintiff recovered a joint and several judgment against said three defendants in the sum of $567.13. In the second action plaintiff recovered a like judgment against the same defendants in the sum of $1891.06, with interest at seven per cent per annum from certain dates stated therein. From these judgments the North American Association alone appeals. These two cases were tried together and by stipulation they are brought up on a single appeal.

The facts of this controversy, or rather controversies, although the two transactions involved are so closely connected that they might well be considered as one transaction, had their inception in a plan of the Davenport Realty Company, Inc., to construct a couple of houses upon two lots in a subdivision in San Mateo County, known at the Belmont Country Club. The Davenport Realty Company, Inc., purchased these two lots, which we will refer to as lots 28 and 34, from the Peninsula Properties Company for $500 each. It then negotiated two building loans to be secured by trust deeds from the Pacific American Association, one for $4,000 on lot 28, the proceeds of which were to be used to construct a dwelling-house on said lot, and the other loan for $6,000, the proceeds of which were to be used to construct a building on lot 34. A second trust deed was executed in favor of the Peninsula Properties Company, on each lot to secure the sum of $500, being the purchase price of said lot, but by agreement of all parties interested the liens in favor of the Peninsula Properties Company were subordinated to those of the Pacific American Association. These trust deeds were all placed of record in the office of the county recorder of San Mateo County prior to the commencement of any work on either of said buildings. Thereafter the plaintiff furnished certain building materials which were used in the construction of said houses. The reasonable value of the materials so furnished and which were used in the construction of the dwelling-house on lot 28 was $567.13, and those used in the construction of the house on lot 34 was $1891.06. The materials for the house on lot 28 were furnished on or about April 14, 1930, and on that day the Davenport Realty Company, Inc., gave an order for the amount thereof,

$567.13, on the Pacific American Association for said sum, which was accepted and payment guaranteed by said association on said day. Building materials of the value of $1891.06 were furnished by plaintiff to the Davenport Realty Company, Inc., for the construction of the house on lot 34. Three orders totaling the sum of $1318.75 were during the months of May and June, 1930, given by the Davenport Realty Company, Inc., on the Pacific American Association, and said association accepted and guaranteed the payments of said three orders. Thereafter negotiations were entered into between the Pacific American Association and the North American Association which resulted in a written agreement of sale of the assets of the Pacific American Association to the North American Association. This agreement was dated August 11, 1930, and was made subject to the approval of the building and loan commissioner, which approval was given in writing on September 10, 1930. By virtue of said agreement of sale the North American Association succeeded to the business and acquired all of the assets, with minor exceptions set out in said agreement of sale, of the Pacific American Association. Among the assets acquired was the sum of $3,950.63, which was designated in said agreement of sale as "Commitments on Incompleted Loans". Of this item, $101.93 was the part remaining of the $4,000 loan on lot 28, and $2,436.60 was the part remaining of the $6,000 loan on lot 34, and the balance was a part of a third loan with which we are not concerned. At the time of the purchase of the business and assets of the Pacific American Association by the North American Association the house on lot 28 was practically completed while the house on lot 34 was in an unfinished state. On acquiring said business the two houses were completed, and the North American Association paid out for labor and materials used in their completion the total amount of said two loans, except the sum of $64.63 of the $6,000 loan.

Appellant, the North American Association, makes the following contentions on this appeal:

(1) Appellant bought no material from the plaintiff, and by its contract with the Pacific American Association did not assume any obligation of the Pacific American Association to the plaintiff.

(2) The court erred in refusing to permit the appellant to introduce parol evidence to explain the financial statement attached to the agreement of sale.

(3) The findings are not supported by the evidence as to the item of $572.31, which represented the lumber and building materials furnished by plaintiff in the construction of the building on lot 34, and for which no order in favor of the plaintiff was ever given to the Pacific American Association by the Davenport Realty Company, Inc.

The decision of the first question raised by the appellant involves the construction of the agreement of sale whereby the appellant acquired the business and assets of the Pacific American Association. Preliminary to the decision of that question, it might be well to give a few further facts regarding the transactions which resulted in plaintiff supplying building materials for the construction of said buildings. Mr. Hurst, sales manager of the plaintiff, testified, and his testimony is uncontradicted, that at the time he agreed to furnish lumber and building materials to the Davenport Realty Company, Inc., for the construction of the house on lot 28, he knew of the two prior encumbrances against said lot and he was not willing to furnish said materials and rely upon a third lien against said lot as security for payment for said materials. He also knew that the Davenport Realty Company, Inc., was not able financially to construct said building without the assistance of said loan from the Pacific American Association. He therefore took up with this association the question of whether the money from the $4,000 on said lot 28 would be available to pay claims for materials furnished in the construction of the building on said lot. While he did not state the result of this interview, it must be inferred that he received satisfactory assurances that said money would be so available, for he immediately furnished materials amounting to $567.13, for the construction of said building, and thereafter an order was given for this amount and accepted by the Pacific American Association. When it came to the furnishing materials for the construction of the building on lot 34, Mr. Hurst stated that he knew of the two prior encumbrances on said lot, but he did not take up with the Pacific American Association the question as to whether the $6,000 loan would be available for the payments of materials furnished for the constructing of the

building on said lot, but he did furnish to the Davenport Realty Company, Inc., lumber and other building materials of the value of $1891.06, and received on account of the materials so furnished three orders which were subsequently accepted by the Pacific American Association, amounting in all to $1318.75, which left an open book account of $572.31 as a balance due for the said materials.

As to the four accepted orders, one against the proceeds of the $4,000 loan and the three others against the proceeds of the $6,000 loan, there can be no question of the liability of the Pacific American Association upon these orders. Having accepted them and guaranteed their payment under the circumstances just related, the Pacific American Association became legally liable for their payment and this obligation on its part was outstanding and unsatisfied at the time this association sold out to the North American Association.

Taking up the agreement of sale, the parts thereof material to our present purpose are as follows:

"Whereas, First Party [North American Association] is desirous of purchasing certain of the engagements, funds and property of Second Party [Pacific American Association], and assuming all liabilities and obligations of Second Party, excepting its guarantee capital stock, surplus and undivided profits, and Second Party is desirous of selling such assets and conveying such liabilities upon the payment to Second Party by First Party for said assets and good will in connection therewith, the sums hereinafter referred to:

"Now, Therefore, for and in consideration of the premises, stipulations, agreements and conditions contained and other good and valuable consideration, it is agreed as follows:

"Second Party agrees to sell, assign, grant, transfer, set over and convey unto First Party all of its engagements, funds and profits and assets of whatsoever kind or nature, including moneys on deposit in banks, loans, furniture and fixtures, cash on hand, good will, and any and all property as a whole belonging to or owned by Second Party, of each and every character, kind or nature and wheresoever situated, be it real, personal or mixed property, tangible or intangible property or easements or choses in action, excepting however, the following items of Certificate Loan $75.00;

Notes and Accounts Receivable $200.12; Supplies and Deferred Expenses $6,355.78; and Organization Expense $87.50, appearing on the financial statement of Pacific American Building-Loan Association bearing date July 31, 1930, copy of which is attached hereto. In consideration therefor, First Party assumes and agrees to pay all obligations of Second Party excepting any liability which may exist by reason of or under any outstanding guarantee capital stock and any guarantee capital stock surplus and any undivided profits.
. . .

"For the purpose of calculating the amounts to be paid Second Party by First Party in accordance with the provisions of this agreement, the same shall be determined as of the 31st day of July, 1930, upon the financial statement of Thomas & Moore, certified public accountants, heretoabove referred to and attached hereto."

We think it perfectly plain that by this agreement the North American Association assumed and agreed to pay all obligations of the Pacific American Association with certain minor exceptions therein stated, and that the claims of the plaintiff against the Pacific American Association were not within these exceptions. Appellant makes the further rather startling claim that the only reference in the agreement of sale to any assumption of liability by the North American Association is in the recital of said agreement where it is stated that the North American Association "is desirous of . . . assuming all liabilities and obligations of the Second Party", and that "no such statement is found in the contractual portion of the document". In the closing part of the next to the last paragraph of the agreement, which we have quoted above, is to be found a direct and express undertaking on the part of the North American Association "to pay all obligations of the Second Party" [the Pacific American Association] with certain exceptions which do not include the claims of the plaintiff. [3] It is further contended by the appellant that according to the agreement of sale, the obligations assumed by it are those set forth in the financial statement prepared by Thomas & Moore, certified public accountants. But a casual reading of the quoted portions of the agreement, and they contain the only reference to the financial statement of Thomas & Moore in the entire agreement, shows that this financial

statement was adopted as the basis "of calculating the amounts to be paid Second Party by First Party", and for no other purpose. Annexed to the agreement are the resolutions of the respective boards of directors of the two contracting parties authorizing the execution of the agreements by the proper officers. In these resolutions this financial statement of Thomas & Moore is referred to more in detail and a condensed report of assets and liabilities of the Pacific American Association is set forth therein. The claims of the plaintiff are not contained in said report of assets and liabilities, and there is no express authorization for the inclusion in the agreement of sale of any agreement to assume all the liabilities of the Pacific American Association by the North American Association. But reading these resolutions in their entirety, we think their intent and purpose were to authorize the purchase and sale of substantially all of the assets of the Pacific American Association, with a corresponding assumption of its liabilities and obligations, and that the agreement of sale as executed by the officers of the two associations was well within the authority granted them under said resolutions. Our conclusion in this matter is that the appellant by said agreement of sale assumed and agreed to pay the obligations of the Pacific American Association, including the legal claims of the plaintiff against said last-named association. This agreement has never been rescinded by the parties thereto, and having been made for the benefit of the plaintiff, it may enforce the same against appellant. (Civ. Code, sec. 1559.)

We have already disposed of the four accepted orders in favor of plaintiff, drawn and accepted by the Pacific American Association, and having been assumed by appellant, the judgment against appellant as to these claims is valid and binding upon appellant. The claim for $572.31, for which no order was given, stands upon a different basis. The building materials, represented by this claim, were sold to the Davenport Realty Company, Inc., and were used in the construction of the dwelling-house on lot 34. The Pacific American Association made no promise, either express or implied, to pay said claim. It had, however, certain funds in its hands to pay the cost of constructing said building, and it was in duty bound to apply said funds to that purpose. (*Smith* v. *Anglo-California Trust Co.*, 205

Cal. 496 [271 Pac. 898]; *Pacific Ready Cut Homes, Inc.,* v. *Title Ins. & Trust Co.,* 216 Cal. 447 [14 Pac. (2d) 510].) When it transferred this fund to the North American Association, its transferee was under the same obligation to administer said fund. The evidence shows, however, that the total amount of this fund, except the sum of $64.63, has been paid out by the appellant for labor and materials used in the completion of said building, and if appellant is obliged to pay the three orders given against this fund and accepted by the Pacific American Association, as we have held that it is under legal obligation so to do, then said fund will be more than exhausted, and there is nothing in the hands of the appellant to which plaintiff's claim can attach. [5] It is true that there are decisions which hold that the plaintiff had an equitable lien against said fund, and ordinarily equitable claims against a common fund, which is insufficient to pay all claims in full, share *pro rata* in said fund. Under the facts in this case, however, we are unable to perceive how the plaintiff is entitled to the protection of this rule of equity. While it did furnish materials for said building prior to the appellant's purchase of the assets of the Pacific American Association on August 11, 1930, yet it failed to notify either the Pacific American Association or the appellant of its claim of $572.31 until December 15, 1930. In the meantime the building had been practically completed, and appellant had expended, or had obligated itself to expend, substantially the whole fund. Under these circumstances, we think it would be inequitable to permit the plaintiff to share *pro rata* in said fund. Accordingly, there is no evidence in our opinion to support the finding of the trial court that the appellant became indebted to plaintiff for money had and received in the sum of $1891.06, or in any greater sum than the difference between said sum of $1891.06 and said sum of $572.31, which would be $1318.75. The judgment in the second action should be reduced by deducting from the amount thereof the sum of $572.31.

▮ The assumption by the plaintiff that, by this agreement of sale above referred to, there was a merger of these two corporations and, therefore, the surviving corporation became liable for all the obligations of either of the original corporations, does not, in our opinion, help plaintiff's cause.

We have shown that the Pacific American Association never became liable for the payment of plaintiff's claim of $572.31. Therefore, even under the theory of merger, appellant did not become liable for its payment. At most plaintiff had an equitable lien for this amount against the funds created by said $6,000 loan, whether such fund was in the hands of the appellant or the Pacific American Association and by failing to give notice to either of said associations of its claim until the appellant had virtually expended said fund in the erection of said building, it lost its right to participate in said fund.

Neither do we think that the notice served December 15, 1930, by plaintiff upon appellant, could be construed as a notice to withhold under section 1184 of the Code of Civil Procedure, and thereby create an equitable garnishment of that part of said fund then in the hands of appellant. The notice provided for in said section applies only to the owner of a building, and since its amendment in 1911 this section has no mandatory effect. (*Hubbard* v. *Jurian*, 35 Cal. App. 757, 761 [170 Pac. 1093]; *Hornlein* v. *Bohlig*, 37 Cal. App. 646, 648 [174 Pac. 697].)

The remaining ground relied upon by appellant for the reversal of both judgments relates to the rejection by the trial court of evidence tending to show that the claims of the plaintiff represented by said four accepted orders were not included in the financial statement prepared by Thomas & Moore. The court rejected this evidence on the ground that it was immaterial. We agree with this ruling. We have already given some consideration to this financial statement. The assumption of the obligations of the Pacific American Association by the appellant was not made in reference to, nor was it limited by, the terms of this financial statement. The only purpose of this financial statement, as we understand the agreement of sale, was to determine the amount which appellant should pay to the Pacific American Association for the assets of the latter company transferred to appellant.

A further point is made by appellant that the court erred in refusing to reopen the case some three weeks after the trial and before its decision by the trial court. The granting or denial of such a motion is largely within the discretion of the trial court. (*Mowry* v. *Starbuck*, 4 Cal.

274.) The evidence upon which the appellant based its motion to reopen the case pertained entirely to matters and events which took place between the appellant and the Pacific American Association before the building and loan commissioner at or about the date the agreement of sale was executed. This evidence must necessarily have been known to the officers of the appellant before the case was closed. It was not error, therefore, to deny the motion. (*Loftus* v. *Fischer*, 113 Cal. 286 [45 Pac. 328].) Besides, we think that this evidence did not relate to any material issue in the case.

It follows from the views hereinbefore expressed that the judgment in the second action should be modified by striking therefrom that portion thereof which permits a recovery by the plaintiff of said sum of $572.31, and interest thereon.

It is therefore hereby ordered that the judgment in the action entitled *San Mateo Planing Mill Co.* v. *Davenport Realty Co., Inc., et al.,* be and it is hereby affirmed, and the judgment in the action entitled *San Mateo Planing Mill Co.* v. *Peninsula Properties Co. et al.,* is hereby modified by striking therefrom the last paragraph thereof, and by inserting in lieu thereof the following: It is ordered, adjudged and decreed that plaintiff have and recover judgment from and against the defendants Pacific American Building-Loan Association, a corporation, and North American Building-Loan Association, a corporation, in the sum of $1318.75, together with interest at the rate of seven per cent per annum on $1144.19 from May 22, 1930, and on $174.56 from June 10, 1930, and costs of suit in the sum of $23.95. The judgment as so modified is affirmed.

As the appeals are from two separate judgments, one of which was affirmed and the other affirmed after modification, we think that the proper order to make herein regarding costs on appeal would be that the appellant recover one-half only of its costs, and it is so ordered.

Langdon, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.