[Civ. No. 14373. Second Dist., Div. Three. Oct. 23, 1944.]

WHITING-MEAD COMPANY (a Corporation), Plaintiff and Respondent, v. WEST COAST BOND AND MORTGAGE COMPANY (a Corporation) et al., Defendants and Respondents; LOS ANGELES PLUMBING CORPORATION (a Corporation), Appellant.

LOS ANGELES PLUMBING CORPORATION (a Corporation), Appellant, v. WEST COAST BOND AND MORTGAGE COMPANY (a Corporation), Respondent.

D. Chase Rich for Appellant.

Tudor Gairdner for Respondents.

DESMOND, P. J.—L. A. Plumbing Corporation appeals from a judgment by which it was denied any recovery from West Coast Bond and Mortgage Company but which ordered that corporation to pay in fixed and ratable amounts the sum of $1,764.71 to Whiting-Mead Company and five other laborers

and materialmen. Two actions were consolidated for trial. The first, filed September 4, 1942, in which the Whiting-Mead Company appeared as plaintiff, was entitled "COMPLAINT IN EQUITY TO DETERMINE VALIDITY AND PRIORITY OF LIEN CLAIMS AND TO REQUIRE THE PRO RATA PAYMENT OF FUNDS ON ACCOUNT OF VALID AND ENFORCEABLE LIEN CLAIMS." This complaint joined as defendants, the West Coast Bond and Mortgage Company (which for convenience will be called, in this recital, "the Mortgage Company"), this appellant, and various corporations and individuals who had furnished material and labor upon a building constructed for one David Dirks, and who had filed liens for their claims. The second suit was filed originally in the Municipal Court of Los Angeles on November 13, 1942, and on January 7, 1943, was transferred to the Superior Court of Los Angeles County. In this action the appellant sought to subject the money held by the mortgage company, $1,764.71, to its claim against Dirks, which had been established in a municipal court action, for the sum of $175.25, and for which a writ of execution had issued. The mortgage company, in a garnishee process, had refused to honor the writ of execution on the theory that the money which it held did not belong to Dirks and had been sustained in that position in supplemental proceedings (Code Civ. Proc., §§ 714-723). Dirks had borrowed from the mortgage company the sum of $12,750 for the purpose of constructing a building upon an unimproved lot which he owned in the city of Los Angeles. As security for this indebtedness he furnished the mortgage company with a first trust deed against the property in accordance with the terms of a written agreement, dated August 18, 1941, which provided that the money "available for construction purposes, shall be paid to David Dirks upon orders signed by David Dirks which state that the proceeds are requested and received for the express purpose of paying bills and claims for labor performed and/or materials used in the construction or completion of buildings on said real property." The funds, according to the agreement, were to be advanced under a "Six-Payment Plan" and upon completion of the building "any balance," in the words of the agreement, "shall be paid to David Dirks when there is deposited with you [i.e. the Mortgage Company] his affidavit stating that all claims for labor and/or materials used in such construction have been paid or ordered to be paid out of the funds in this

escrow." By the terms of this agreement "The owner hereby authorizes the lender, at any time at its option, either in its own or the owner's name, to do any and all things necessary or expedient in the opinion of the lender to secure the erection and completion of the improvements in accordance with the plans and specifications, to accept the improvements as completed or substantially completed, to execute, verify and file notices of completion and other notices provided for or required by State or the construction Contracts and to make or withhold payment for labor and materials used in the construction, and to do any and every act or thing appertaining to or arising out of the construction or completion of the improvements or any contract therefor, using any and all the funds hereinbefore mentioned herein."

Notice of completion of the building was recorded in January, 1942. Meantime, Dirks had conveyed the property to a new owner and has never furnished the mortgage company with an affidavit stating that all claims for labor and materials have been paid or ordered paid out of the funds in escrow. He could not truthfully make such an affidavit in view of the fact that, according to the findings herein, based upon a stipulation entered into at the trial, he owed the lien claimants, to whom a judgment was given in this case, the aggregate sum of $4,761.48. The mortgage company still holds unexpended from the proceeds of Dirks' loan the sum of $1,764.71, and the question raised by this appeal is whether the trial court was justified in finding that this money constituted a trust fund to be administered solely for the benefit of the lien claimants, thus eliminating any participation by this appellant.

The mortgage company has not claimed any right to apply the balance in its hands toward payment of the Dirks trust deed; neither has Dirks made any claim personally for any part of the money,—not having filed the required affidavit he cannot do so; nor has he requested, so far as the record shows, that any portion of the fund be paid to this appellant, to anyone who furnished labor or materials for the building, or to anyone else. He does not claim to own this balance or any part of it; and if, in fact, it does not belong to him, it is, of course, immune from garnishment by his general creditor, L. A. Plumbing Corporation.

The appellant, in its brief, states that "The complaint of

the Whiting Co. was framed, apparently, to bring it within the doctrine originally announced by our Supreme Court in the case of *Smith* v. *Anglo-California Trust Co.*, 205 Cal. 496 [271 P. 898].'' And since he finds in that opinion a statement that ''the right, if there be such right, to have the sum of $4,090 applied *pro tanto* in payment of the mechanics' lien claims cannot be enforced by virtue of any declared trust or one to be implied from the terms and conditions of the loan agreement,'' he argues that in the instant case no trust was created or implied by the agreement between Dirks and the mortgage company. That this does not follow appears from a comparison of the entirely different systems by which the proceeds of the loans in the two cases were required to be paid out. In the Smith case, *supra,* at page 502, the court stated: ''there is nothing in the nature of the agreement, or in its terms, that made it obligatory upon the securities company to see that the money advanced thereunder was, in fact, applied to payments for labor and materials furnished in the construction work,'' and not being able to afford the lien claimants relief as beneficiaries of a trust, express or implied, proceeded to extend relief by applying the doctrine of equitable estoppel. No such difficulty confronted the court in this case, for the language of the agreement here restricted payments by the mortgage company to bills presented for labor and material, with the proviso that any balance remaining unexpended should be paid to Dirks upon his filing the affidavit which would show all bills paid.

█ It was natural and right that the court should determine that under these conditions a trust existed. The theory under which this trust was recognized and made operative is clearly shown by the respondent in his brief, and is based directly upon a well considered memorandum opinion, entitled ''Notice of Decision and Informal Comment,'' which was filed in the case by the learned trial judge. We agree generally in the following statement in the respondent's brief:

''The contract did not obligate the Mortgage Company to pay the money to Dirks unless he delivered orders signed by him, and executed his affidavit. Notwithstanding the foregoing, the Mortgage Company was authorized by Dirks to do anything necessary in its opinion to secure completion of the improvements and to itself pay the furnishers of labor and materials direct. Since Dirks failed to pay all bills, although

the improvements were completed (it being admitted by stipulation that he owes $4761.48 to the six claimants alone), since Dirks did not file his affidavit, and since by the terms of the agreement the loan funds were to be used in paying for labor and materials, Dirks was neither the owner of nor entitled to any of the $1764.71 remaining in the loan.

"Under the terms of the agreement, the Mortgage Company could itself have paid the balance to claimants; however, the amount of the balance being insufficient to pay claimants in full, the Mortgage Company could not with safety pro-rate said funds until the validity of said claims had been established by a Court of competent jurisdiction.

"Dirks having executed his $12,750.00 promissory note to the Mortgage Company for money by him borrowed from the latter, and the funds so borrowed remaining under the control of the Mortgage Company, the latter became a trustee in the management of those funds. (C. C. 2219.)

"In addition to the broad ethical responsibilities placed by law on all trustees, the duties of trustees are defined by the particular facts of the case and by the particular agreement under which the moneys or other assets remain under their control, and to such agreement one must look in determining precisely the parties, purposes and objects of the trust.

"In the case at Bar we have such an agreement.

"The person whose confidence creates a trust is called the trustor; the person in whom the confidence is imposed is called the trustee; and the person for whose benefit the trust is created is called the beneficiary. (C. C. 2218.)

"The mutual consent of a trustor and a trustee creates a trust of which the beneficiary may take advantage at any time prior to its rescission. (C. C. 2251.)

"Dirks, whose confidence having created the trust became the trustor, and the Mortgage Company in whom the confidence was reposed by holding in trust the money it had loaned to Dirks, became the trustee.

"What then, was the purpose of the trust, and who were the persons for whose benefit the trust was created?

"One of the beneficiaries was the Mortgage Company itself, whose personal interest was its right, under the agreement, to have on the property a completed structure, built according to certain plans and specifications, thus providing the agreed security for the loan.

"The agreement, by its provisions, was so designed to carry out this, among other purposes of the trust.

"Another beneficiary of the trust was Dirks, whose beneficial right under the agreement, subordinated to the rights of the Mortgage Company was to have *expended for his benefit, whether paid directly to him or not,* the borrowed funds reflected in his promissory note, in constructing the improvements, and the payment to him of any unexpended residue of the funds, after full completion of the improvements and payment in full for all labor and materials utilized in such completion.

"Under the clear language of the agreement, the Mortgage Company has not had at any time, the authority or right to pay to Dirks the unexpended residue of the trust funds now in its possession. It could not lawfully make such payment except upon receipt of Dirks' affidavit stating that all claims for labor and materials have been paid or ordered to be paid out of the funds. Even had the Mortgage Company received such affidavit, it was authorized at its option, to pay the funds directly to laborers and materialmen rather than to Dirks. Thus Dirks is eliminated as a possible distributee of the trust funds remaining.

"The Mortgage Company now having its completed structure, and its trust deed having priority over the claims of suppliers of labor and materials, the purpose of the trust which was to serve the interest of the Mortgage Company as beneficiary, has been fully obtained. Therefore the Mortgage Company as trustee has no authority to distribute any of the remaining funds to itself.

"Who then are entitled to receive the remaining trust funds? How can the trust be closed?

"The law never requires impossibilities nor idle acts. (C. C. 3531; C. C. 3532.)

"The trust having been created for the purpose of paying the cost of constructing the improvements and being *functus officio* as to two beneficiaries, the Mortgage Company and Dirks, except only as Dirks will be benefited by the proper use of the funds, it follows that the remaining funds must be used to pay for the building, that is to pay for unpaid labor and materials. This result must follow whether such payment be regarded as being made on behalf of the beneficiary Dirks, or to the suppliers of such unpaid labor and materials as ad-

ditional beneficiaries of the trust, whose rights as such were subordinated to those of the other two beneficiaries and which rights did not accrue until the other two beneficiaries were eliminated as rightful distributees.

"By such use of the funds, Dirks will be benefited, as his indebtedness to such unpaid laborers and materialmen will be reduced and will have the same effect as if the payments were made directly to him.

"It therefore becomes the duty of the Mortgage Company as trustee to apply the remaining funds on the unpaid claims for labor and materials used in the construction, regardless of the filing by such laborers and materialmen of Mechanics Claims of Liens or the bringing of actions to foreclose same."

▆ We have considered the claim of the appellant that the superior court lacked jurisdiction to try this case as a suit in equity because the amount involved is less than $2,000 and also because the claimants had a right to sue at law for the payment of their bills. Our approval of the decision of the trial court, holding that a trust existed, indicates that in our opinion this jurisdictional point is not well taken. In his memorandum the trial judge made this comment: "As to the unpaid suppliers of labor and materials, it is obvious that the duty of the trustee to pay to them the remaining trust funds does not depend on the filing of liens or the bringing of actions to foreclose the liens. As counsel for the Los Angeles Plumbing Corporation aptly pointed out, the filing of liens has to do only with the claimant's interest in the property to which the labor and materials contributed. The liens mean nothing as to the fund in question, and as liens, establish no rights to that fund. The unpaid laborers and materialmen come into an interest in that fund because it is now the duty of the trustee to pay that money to persons who helped build the building and who have not been paid for their part in it. Liens and actions to foreclose them are irrelevant."

The judgment is affirmed.

Wood (Parker), J., concurred.

SHINN, J.—I concur in the judgment. The rights of the lien claimants are simple legal rights arising out of the contract and independent of any alleged trust relationship. The

loan agreement was made for the benefit of Dirks and also the materialmen and laborers. This is a necessary conclusion from the fact that Dirks was not to receive the final payment except upon proof by affidavit that all claims for labor and materials had been paid or ordered paid out of the loan. If he could not make this affidavit truthfully no one but the laborers and materialmen would have any right to the money that it would take to satisfy their claims. Dirks was not entitled to the money in question until he had paid the lien claimants. It is true that the agreement did not make it obligatory upon the loan company to pay the claims of laborers and materialmen as they arose, although they had the discretion to do so, but when Dirks forfeited all right to the balance on hand the money became due to the creditors because they were the sole remaining beneficiaries of the agreement. The provision for disbursement of the balance of the loan was not only for their benefit but for their exclusive benefit to the extent of the unpaid claims. No money was due Dirks at the time appellants' writ of attachment was levied and nothing was impounded thereby.

The superior court had jurisdiction of the action. The loan company held a fund claimed in part by plaintiff, by each of the other laborers and materialmen named as defendants, and by appellant claiming an attachment lien. Equity had jurisdiction of the action as one to prevent a multiplicity of suits, under the rule stated by Mr. Pomeroy, Equity Jurisprudence, fifth edition, volume I, section 245, pages 465-6: that an action may be maintained "3. *Where a number of persons have separate and individual claims and rights of action against the same party,* A, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone." The rule is stated in another way in 30 Corpus Juris Secundum, page 372, section 43: "Where, instead of a complexity of controversies between two parties with respect to the same subject matter, the complexity arises from there being involved the several rights of more than two, each demanding adjustment, and each requiring at law a separate action, equity may take jurisdiction of a suit to which all are parties and therein adjust all rights and determine the whole controversy."

It was sought to have the loan company pay the money into court and all claimants thereto were made parties defendant. They answered, asserting their claims, and the loan company answered admitting its possession of the fund and asserting that there were numerous claims thereon, the amount and validity of which were unknown to said defendant. The matters in issue could not have been decided in any one or in several actions by the respective claimants against the loan company until all of the claimants had been brought into court, in order that they might prove their claims to a share of the fund not only against the loan company but as against each other. Only a decree in equity could have accomplished this purpose.