[55 Cal.Rptr. 884]

[Civ. No. 30173.   Second Dist., Div. One.   Nov. 10, 1966.]

GORDON BUILDING CORPORATION, Cross-complainant and Appellant, v. GIBRALTAR SAVINGS AND LOAN ASSOCIATION, Cross-defendant and Respondent.

2

Fierstein & Dolin and Harvey Fierstein for Cross-complainant and Appellant.

Frank W. Swann, Jr. and Robert K. Light, for Cross-defendant and Respondent.

FOURT, J.—The trial court sustained a demurrer to the second amended cross-complaint of the appellant herein without leave to amend and entered a judgment of dismissal based on its determination. The cross-complainant, Gordon Building Corporation, appeals from that judgment. We concur with the trial court that ''[I]t is not possible for Cross-Complainant to state any cause of action on any theory against Cross-Defendant Gibraltar Savings and Loan Association. . . .''

Paintcraft Painting Co., Inc., hereinafter called Paintcraft, initiated the action from which this appeal evolved by filing a complaint against Gordon Building Corporation, hereinafter called Gordon, for money due and owing for labor and materials furnished to certain residential properties under contracts with Gordon. Gordon, in turn, instituted by cross-complaint an action against Paintcraft and various other defendants including Gibraltar Savings and Loan Association, hereinafter called Gibraltar, as lender and Brentview Builders as owner and developer of certain residential building lots. The second amended cross-complaint alleges that cross-defendants were at all times acting with Gordon and ''within the purpose and scope'' of an ''agency, employment, joint venture and partnership'' and inexpertly attempts to base an action against Gibraltar on one of several alternative theories; (1) breach of contract; (2) the same based on assignment; (3) breach based upon a third party beneficiary theory; (4) an equitable lien or equitable estoppel. Gordon, after several futile attempts to allege sufficient facts, has demonstrated to the satisfaction of this court that its failure to do so is the result of circumstances which do not justify recovery on any theory.

(1) We take up the first cause of action based on alleged breach of contract by Gibraltar. Gordon alleges that

Gibraltar breached its duty to Gordon by failing to pay Paintcraft on a voucher issued by Gordon. Gordon has presumably made every reasonable effort to demonstrate that it was a party to the agreement made by Gibraltar with Brentview Builders to supply funds for the construction of the subject single family residences and in so doing has attached to its second amended cross-complaint a copy of the "Tract Building Loan Agreement" with Gibraltar. This agreement, executed on December 18, 1961, clearly discloses that only Brentview Builders, Inc., by its president, Bruce Everston, and Gibraltar Savings and Loan Association of Beverly Hills by the authorized signature of Beth Boyd were parties thereto. Although the contract is a form document providing for the name and signature of "the owner's general contractor, if there be a general contractor other than the owner" this scarcely establishes that the owner had a general contractor and it surely does not identify an intended general contractor.

Gordon contends this defect is cured by an unexecuted copy of "Borrower's Loan Instructions," Exhibit "B" to his second amended cross-complaint. Although Gordon alleges that pursuant to this document a construction loan escrow was handled by Pioneer Escrow Company, there is no allegation that Gordon executed this agreement either and signature blanks are labelled only for Brentview Builders, Inc., and Gibraltar. Appellant, however, directs our attention to a typed provision that "Aforementioned Notes are additionally executed by Gordon Building Corp., a California corporation by Herschel H. Gordon, President; I hand you herewith executed Guaranty Agreement, by Gordon Building Corp. for delivery to Lender, together with Guaranty Agreement executed by Herschel H. Gordon and Carolyn S. Gordon, for delivery to lender." These notes for $47,000 each, dated December 18, 1961, and payable to Gibraltar Savings and Loan were executed by Brentview Builders and secured by property held in its name. There is no allegation that the contemplated escrow was ever undertaken or completed, and Pioneer is not named as a party defendant, but even if we may infer that Gordon performed as indicated in this unexecuted document, that would not render Gordon a party to the contract between Brentview and Gibraltar.

One who consigns, endorses, or otherwise guarantees the payment of a debt is not thus made a direct party to a financial agreement between the creditor and the primary

obligor. (*Tyson* v. *Reinecke*, 25 Cal.App. 696, 701 [145 P. 153]; *San Francisco Theological Seminary* v. *Monterey County Gas & Elec. Co.*, 179 Cal. 166 [175 P. 693]; *Chinn* v. *Penn*, 179 Cal. 153 [175 P. 687].) ██ Therefore, insofar as breach of contract is concerned, Gordon's cross-complaint is fatally defective, not only because it fails to show that Gordon was a party to the contract, but it further fails to allege that Gordon duly performed all conditions precedent to the alleged breach of obligation on the part of Gibraltar. ██ In order to state a cause of action for breach of contract, the performance of conditions precedent must be alleged either generally or specifically. (Code Civ. Proc., § 457; *Eddy* v. *Louis M. Hickman*, 136 Cal.App. 103 [28 P.2d 66]; *Byrne* v. *Harvey*, 211 Cal.App.2d 92 [27 Cal.Rptr. 110].)

██ (2) Gordon, nonetheless, further alleges that Brentview assigned to Gordon whatever rights it had, including its rights to loan proceeds, under the contract between Brentview and Gibraltar. Conceding as we must that Brentview attempted an assignment to Gordon, we look to the wording of the contract itself. The final sentence of paragraph 7 in the "Tract Building Loan Agreement" states: "The undersigned agree that, except as hereinabove mentioned, no assignment or transfer, voluntary or involuntary, of this agreement, or of any right hereunder, shall be binding upon or in any way affect the Association, without its written consent, and that the Association may pay out the moneys in said account as provided herein notwithstanding any such assignment or transfer." Clearly the phrase "except as hereinabove mentioned" relates to the preceding sentence in the same paragraph which states: "Subject to the provisions hereof, the undersigned, and each of them, hereby irrevocably assign to the Association as security for the obligation secured by said trust deed and for the due performance of this agreement by the undersigned, or any of them, and for any other joint and/or several obligations to the Association of the undersigned, or any of them, all of the right, title and interest of the undersigned, or any of them, in and to said account and all moneys to be placed therein, specifically including amounts that may be deposited in said account from time to time in the future, either by the undersigned, or any of them, or by the Association."

Therefore, except for the assignment of the Loan in Process account to the Association in discharge of the indebtedness,

Brentview was prohibited from making any assignment of the "Tract Building Loan Agreement" or any right thereunder to any third party. Moreover, the pledge of funds to the Association constituted a prior assignment of which Gibraltar had notice, and the contract further provides that "the Association may pay out moneys in said account as provided herein notwithstanding any such assignment or transfer," thus indicating that any attempted assignment to a third party would constitute a futile act.

Finally, Gordon cannot prevail on Brentview's effort to substitute Gordon in the contract, there being no indication that consent thereto by Gibraltar was ever either requested or obtained. ■ Where the prohibition against assignment relates not only to the contract, but also to the moneys due or to become due thereunder, and there is no waiver of the prohibition by the obligor, it will be enforced in his favor, since his rights to the money due under the contract are superior to those of the assignee. (*Benton* v. *Hofmann Plastering Co.*, 207 Cal.App.2d 61, 67-69 [24 Cal.Rptr. 268]; *Parkinson* v. *Caldwell*, 126 Cal.App.2d 548, 552-553 [272 P. 2d 934].)

■ (3) Gordon, however, further ineffectually alleges that it is a third party beneficiary of the contract between Brentview and Gibraltar, and attempts to analogize its position to those cases wherein the subcontractors as a class have been considered to constitute intended third party beneficiaries of the construction loan agreement.

Paragraph 29 of the "Tract Building Loan Agreement" states: "This agreement is made for the sole protection of the undersigned and the said Association, its successors and assigns, and no other person or persons shall have any right of action hereon. . . ." It has been held that where both the general contract and that between the general and subcontractor provide that nothing therein shall create any contractual relation between the subcontractor and the owner, such owner constitutes only an incidental beneficiary of a contract for labor and materials executed between the general and subcontractor. (*G & P Electric Co.* v. *Dumont Constr. Co.*, 194 Cal.App.2d 868, 878-879 [15 Cal.Rptr. 757].) There is no allegation in the instant case from which it may be inferred that Gordon was an intended beneficiary; indeed, the provision hereinabove disclosed would prohibit such a construction.

■ Whether one is an incidental or intended beneficiary

of a contract is a question of construction of the document in the light of surrounding circumstances. ▮ Although it has been held that undistributed loan funds may belong to subcontractors as a class of protected and intended third party beneficiaries (*Whiting-Mead Co.* v. *West Coast etc. Co.*, 66 Cal.App.2d 460 [152 P.2d 629]), that rationale is not applicable to Gordon since Gordon fails to allege a direct contribution of materials or labor. It generally is the right of the lender to have completed on the property the improvement intended to provide the agreed security for the loan and it is the right of the borrower to have expended in the construction of improvements for his benefit, whether or not paid directly to him, the borrowed funds reflected by his promissory note.

▮ Where the *borrower* defaults by failing to show that all claims for labor and materials supplied to the site have been paid, but the structure is completed and the trust deed of the lender enjoys priority over claims of suppliers of labor and materials, then the balance in the loan account not yet paid out may be applied to the unpaid claims of subcontractors who furnished labor and materials. (*Whiting-Mead Co.* v. *West Coast etc. Co., supra.*)

▮ Gordon attempts to treat the contract between Brentview and Gibraltar as though it were made for the express benefit of Gordon. This elastic view of contractual obligations we are not free to impress. Gordon has demonstrated, at best, that it was the general contractor initially engaged to construct the improvements to which the construction loan was applicable, but the owner-borrower remained free to change or modify these arrangements, and to employ a different general contractor or substitute himself as owner-builder. ▮ A contract made solely for the benefit of the contracting parties cannot be enforced by a stranger or one who stands to benefit merely incidentally by its performance. (*Russell* v. *Banks*, 11 Cal.App. 450, 459-460 [105 P. 261].)

This view is reinforced by the decision in *Ralph C. Sutro Co.* v. *Paramount Plastering, Inc.*, 216 Cal.App.2d 433 [31 Cal.Rptr. 174] which Gordon mistakenly perceives as supporting its position. In the *Sutro* case, *supra,* certain construction loan proceeds were to be paid to the owner in seven progress installments with the final installment withheld until the owner established that all costs of construction, labor and materials had been fully paid. The owner defaulted before receipt of the final installment and the court found that the sum withheld constituted a trust fund for the payment of

subcontractor's claims, and they could enforce the application of the funds to their benefit. Although the loan agreement, which was secured by a trust deed on the property being improved, provided that the lender might withdraw the construction loan balance and credit the amount therein against the indebtedness of the owner-borrower in case of default, where the lender had instituted foreclosure proceedings and purchased the improved property, thereby extinguishing his lien by its merger with the title to the land, he lost any rights he might have had to loan funds then remaining.

It would be a novel theory that the general contractor should accede to the benefit of loan proceeds heretofore considered to constitute a trust for the payment of liens and claims established by subcontractors and materialmen. Indeed, the demonstrated attitude of the law has been to implement the existing statutory scheme protecting subcontractors by methods calculated to forestall the misapplication or diversion of construction funds by the entrepreneurs of the project, including owner, builder, and general contractor or whatever combinations thereof may exist in an individual case.

(4) Finally, Gordon seeks to establish as the basis for its recovery from Gibraltar of money owed to Paintcraft an equitable lien on construction loan proceeds; the circumstances alleged fail to justify such recovery.

Certain decisions have implemented the third party beneficiary theory by evolving a right, on the part of a subcontractor, to recover from the lender for work and materials supplied to the work of improvement which the lender holds as security by imposing an equitable lien or estoppel on construction funds. This theory, most recently applied in *Miller* v. *Mountain View Sav. & Loan Assn.*, 238 Cal.App.2d 644 [48 Cal.Rptr. 278], is based on some affirmative conduct, generally by the lender, calculated to induce reliance by the subcontractor on payment from the construction loan proceeds, which the lender is thereafter estopped to deny.

The court in the *Mountain View* case, *supra*, noted carefully that, in cases involving disposition of loan funds remaining after the completion of the improvement, it has been held that subcontractors may be entitled to the loan balance either because (a) the lender has expressly or impliedly agreed to pay a certain claim (*San Mateo etc. Co.* v. *Davenport Realty Co.*, 218 Cal. 702, 708 [24 P.2d 787]) or (b) the lender who has received the benefit of the claimant's performance, and there-

fore a more valuable security, is not justified in withholding or otherwise appropriating money originally intended to pay for such performance and relied upon by the claimant in rendering such performance (*Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co.,* 216 Cal. 447 [14 P.2d 510].)

▮    Both the third party beneficiary and trust fund theories are predicated upon satisfaction of the lender's claim to receive the security for which he bargained and apply to those furnishing services and materials. (*Miller* v. *Mountain View Sav. & Loan Assn., supra,* p. 662.)

▮    Furthermore, "In the absence of direct evidence of inducement or reliance or other facts from which either may reasonably be inferred no equitable lien can be imposed." (*Miller* v. *Mountain View Sav. & Loan Assn, supra,* pp. 662-663; *Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496, 501-502 [271 P. 898].) In the *Miller* case not only did the trial court find, appropriately under the evidence, that the subcontractor relied, but the subcontractor itself asserted and proved facts justifying reliance.

▮    In the instant case Gordon does not allege that it directly supplied labor or materials to the work of improvement, nor does it allege facts which might justify its purported reliance on the construction loan proceeds. Nor can the general contractor in this guise impose upon Paintcraft, which apparently failed to file either a mechanic's lien or stop notice for reasons undisclosed, the obligation to seek relief from Gibraltar instead of Gordon to its probable detriment. Paintcraft's complaint, indeed, names Gordon alone as defendant and by implication refutes any contention that Paintcraft was induced to rely on some other source for payment, and Paintcraft is limited only by legal logic in the exercise of its election of remedies.

The judgment of dismissal entered by the trial court is affirmed.

Wood, P. J., and Lillie, J., concurred.