[S. F. No. 12685. Department Two.—November 16, 1928.]

MARY H. SMITH, Administratrix, v. ANGLO–CALIFOR-
NIA TRUST COMPANY (a Corporation) et al., Ap-
pellants.

B. S. Gregory, Sullivan & Sullivan and Theo. J. Roche, Harry F. Sullivan, Young & Hudson and Bert F. Robinowitz for Appellants.

Milton Marks for Respondent.

THE COURT.—This is an appeal by certain of the above-named defendants from a judgment entered for the plaintiff

in an action instituted to recover the sum of $4,090 from the defendant Anglo-California Securities Company. The action was tried upon an agreed statement of facts and upon the testimony of but one witness. It appears that Calvin M. Smith, now deceased, had entered into an agreement on or about May 10, 1926, with the A. J. Galbraith Realty Company, wherein and whereby the former agreed to purchase and the latter to sell for a total purchase price of $4,500 five lots or parcels of real property situate in the city and county of San Francisco. On June 26, 1926, and in furtherance of said agreement, the purchaser took title and executed and delivered to the seller, in payment of the agreed purchase price of said lots, his five several promissory notes, each in the sum of $900. As security for these purchase-money notes Smith, at the same time, executed and delivered five separate deeds of trust covering the lots so purchased by him. In the interim between Smith's agreement to purchase and the final consummation of the transaction, application was made by him to the Anglo-California Securities Company for a building loan with which, if granted, it was intended to improve the property. The securities company, after investigation and appraisement by its agent, granted to Smith a loan of $20,000. He gave to the securities company his promissory note in such sum and as security therefor, executed and delivered, a deed of trust covering the five lots. This latter deed of trust, which named the Anglo-California Trust Company as trustee, was thereafter recorded on the same day as the several trust deeds executed and delivered as security for the payment of the purchase price of the lots. In the agreed statement of facts upon which, as we have said, the cause was tried, it is conceded by all parties to the action that the purchase-money trust deeds were intended to be, and are, subordinate to the trust deed delivered to the securities company as security for its loan granted for improvement purposes. It might also be said in passing that the securities company, upon the granting of the loan, opened in Smith's name a building loan account in the sum of $20,000, against which, as disclosed by the testimony of the sole witness in the case, checks were drawn and issued to Smith as the improvement work progressed. The construction of the buildings upon the five lots was practically completed on or about October 10, 1926, at which time there

remained undisbursed in the building loan account the sum
of $4,090. Within a few days after the completion of the
buildings Smith died, and his surviving widow, the plaintiff
herein, was duly and regularly appointed administratrix of
his estate. Several mechanics' lien claims, totaling approxi-
mately $5,633.30, were filed against the property for labor
and materials furnished in the course of the construction
work. The claimants of such liens made demand upon the
securities company, after Smith's death, to withhold from
the undisbursed funds in the building loan account sufficient
to pay and discharge their claims. Proceedings looking to
the foreclosure of such mechanics' lien claims were there-
after instituted and are apparently still pending and undis-
posed of. On April 9, 1927, the five lots were sold to the
defendant Roth under and by virtue of the power of sale
contained in the deeds of trust delivered to secure the
several promissory notes executed by Smith in payment of
the purchase price. After such sale there remained a de-
ficiency upon the purchase-money notes totaling $2,441.75.
By an assignment the defendant McCallum is now the owner
of all rights under the purchase-money notes and deeds of
trust. The instant action was brought by the administratrix
of Smith's estate to recover from the securities company the
balance of $4,090 remaining undisbursed in the building loan
account existing in her intestate's name. Upon motion of
the defendant Anglo-California Trust Company an order
was made by the trial court bringing into the action as par-
ties defendant all persons asserting any interest in or lien
upon the real property or advancing any claim to the money
balance remaining in the building loan account. Each of
the many defendants answered and, as already stated, the
cause went to trial upon an agreed statement of facts and
the testimony of one witness.

The court below found the facts substantially as stated
herein, and as conclusions of law therefrom declared that
the plaintiff, as administratrix, was entitled to judgment
against the Anglo-California Securities Company in the sum
of $4,090; that the defendants Anglo-California Securities
Company and Anglo-California Trust Company were en-
titled to a judgment and decree declaring the deed of trust
delivered to the latter as trustee for the former to be a first
charge or lien upon the real property and superior to the

adverse claims of all the other defendants. It was also decreed that such other defendants were not entitled to a lien upon the sum of $4,090, for which amount judgment was directed for the plaintiff, remaining undisbursed in the building loan account. Thereafter judgment was entered in conformity with these findings of fact and conclusions of law. The defendants Anglo-California Securities Company and the Anglo-California Trust Company and several of the mechanics' lien claimants have not appealed. However, the appeal of the other defendants presents for consideration the correctness of the trial court's determination of the issues presented by this litigation.

An examination of the authorities satisfies us that the court below did not err when it decreed the trust deed in favor of the Anglo-California Securities Company to be a first and prior charge upon the property described therein. It was apparently agreed by those concerned that this instrument was to take precedence over the purchase-money deeds of trust recorded concurrently therewith. In our opinion, the securities company, by granting Smith's application for a building loan in the sum of $20,000, accepting his promissory note in that amount secured by deed of trust, and opening in his name a building loan account, became obligated to advance or pay to Smith, or on his behalf, the full sum of $20,000. (*Valley Lumber Co.* v. *Wright,* 2 Cal. App. 288, 290, 291 [84 Pac. 58].) In other words, the amount payable by the securities company under the terms of the loan agreement was not an undetermined or optional amount but was at all times capable of definite ascertainment. The authorities, both in this state and elsewhere, are legion to the effect that where a mortgage or deed of trust has been recorded prior to the commencement of work or the furnishing of materials, but the consideration therefor has not passed until after work has commenced or materials have been furnished, the lien of the mortgage or deed of trust is prior and superior to the mechanics' lien claims where the making of the advances is obligatory on the part of the mortgagee or the beneficiary. (*Fickling* v. *Jackman,* 203 Cal. 657 [265 Pac. 810]; *Tapia* v. *Demartini,* 77 Cal. 383 [11 Am. St. Rep. 288, 19 Pac. 641]; *Hall* v. *Glass,* 123 Cal. 500 [69 Am. St. Rep. 77, 56 Pac. 336]; *Valley Lumber Co.* v. *Wright, supra; Fuller* v. *McClure,* 48 Cal. App. 185, 191 [191 Pac. 1027];

*Home Savings & Loan Assn.* v. *Burton,* 20 Wash. 688 [56 Pac. 940, 943] ; *Blackmar* v. *Sharp,* 23 R. I. 412 [50 Atl. 852, 855] ; *Moroney's Appeal,* 24 Pa. St. 372, 377.) In other words, the mortgage or deed of trust, as against subsequent encumbrances or mechanics' lien claimants, becomes a lien for the whole sum advanced from the time of its execution and recordation, and not for each separate amount advanced from the time of such advancement, although the right to enforce the collection thereof can only arise upon each advancement being made. A different rule prevails, however, where the advances are optional with the mortgagee or beneficiary and the lien of the mortgage or deed of trust is, in such case, postponed to the date or dates respectively as of which the advances actually are made. (*Fickling* v. *Jackman, supra; Fuller* v. *McClure, supra.*) These authorities, in our opinion, amply sustain the trial court's decision giving priority, as against the real property involved, to the trust deed securing the loan made to Smith by the Anglo-California Securities Company. The judgment of the court below in so far as it declares the claims and liens of the several other defendants inferior and subordinate to the charge upon said real property created by the deed of trust executed and delivered to the defendant Anglo-California Trust Company, as trustee, for the defendant Anglo-California Securities Company will, therefore, have to be affirmed.

 This conclusion does not, however, dispose of the principal issue presented by this litigation which has to do with the respective rights or interests of the parties in and to the sum of $4,090 remaining undisbursed in the building loan account. Our research has failed to disclose a case directly in point either in this state or in other jurisdictions. In a situation such as confronts us herein it seems but reasonable to conclude that the mechanics' lien claimants, knowing or being charged with knowledge of the encumbrances of record against the real property, must have relied upon, excluding the possibility of the security ordinarily afforded by the filing of mechanics' liens, the agreement between Smith and the defendant Securities Company as to the amount to be advanced for building purposes. It is true, of course, that although the loan was obtained by Smith for the express purpose of improving the property

according to plans and specifications submitted with the application therefor, there is nothing in the nature of the agreement, or in its terms, that made it obligatory upon the securities company to see that the money advanced thereunder was, in fact, applied to payments for labor and materials furnished in the construction work. Hence, any payments made to or on behalf of Smith were in discharge of the agreement of the securities company and brought it under no liability to the lien claimants. It follows, therefore, that the right, if there be such right, to have the sum of $4,090 applied *pro tanto* in payment of the mechanics' lien claims cannot be enforced by virtue of any declared trust or one to be implied from the terms and conditions of the loan agreement. This conclusion necessarily flows from the proposition, just stated, that the securities company was under no obligation by virtue of its contract or agreement to see to the application of the money advanced. Nor do we think the lien claimants can assert such right solely by virtue of the agreement of the securities company to advance the full sum of $20,000, for it is now well settled in this state that to give a third party, who may derive a benefit from the performance of a promise, an action thereon there must have been an intent clearly manifested by the promisor to secure some benefit to the third party. In other words, the promise or contract must have been one "made expressly for the benefit of a third person." (Sec. 1559, Civ. Code; 6 Cal. Jur. 473, sec. 280, and authorities there cited.) What we have said, however, need not necessarily prove fatal to the cause of the appealing mechanics' lien claimants if there exist any special circumstances warranting the imposition in their favor of a charge or lien upon the fund now in dispute. We are of the view that the money remaining undisbursed in the building loan account opened in Smith's name by the securities company should, in accordance with established principles of equity, be so charged. And this by reason of those special circumstances and conditions consisting of representations and conduct upon one side and of action founded thereon upon the other. That the lien claimants must have relied upon the fund to be advanced to Smith by the securities company, and not alone upon the individual capacity of Smith or their right to a last lien upon the premises, as a means of obtaining payment for

their labor and materials, is supported by every reasonable inference deducible from the surrounding circumstances. Smith was engaged in building upon land for which he had not paid the purchase price and which was charged with and subject to the several deeds of trust executed and delivered to secure the entire purchase money. The incapacity of Smith to build without a prearranged loan was emphasized by the existence of these purchase-money encumbrances and attested by the agreement with the securities company for a loan to be used expressly for building purposes. It is also reasonably apparent from the record herein that this loan could not have been obtained without giving the deed of trust for its security priority over the purchase-money deeds of trust. Moreover, the record tends to show that the houses for the construction of which the building loan account was opened have been completed in substantial compliance with the plans and specifications submitted to the securities company in connection with the application for the loan. It requires very little showing, therefore, to produce the conclusion that without confidence in the payment to Smith of the full amount of the loan contracted for the lien claimants would not have extended credit for their labor and materials. The reasonableness of such expectations on the part of the lien claimants must, naturally, have suggested itself both to Smith and the securities company. They should have known that the consummated agreement for the money to be advanced to or on behalf of Smith as the buildings progressed, under a deed of trust taking priority over the statutory liens available to those contracting with him or the general contractor, would constitute a material inducement to them in supplying labor and materials. As if in express recognition of the reasonableness of these expectations, the practice was to make payments from, or withdrawals upon, the building loan account only as the work progressed and after the appraiser for the securities company had, in the line of his duty, reported progress warranting a payment. To concede, therefore, as has been done, that there was no intention on the part of Smith or the securities company to create a trust in favor of the lien claimants by the terms of the agreement for the loan, and that this agreement made it no wrong, actionable on behalf of such lien claimants, for the securities company to with-

hold the money, or any part thereof, does not, in our opinion, answer the conditions presented by the special facts and circumstances stated. Smith and the securities company by their conduct may be said to have induced, or contributed to induce, the lien claimants to enhance the value of the real property by their labors and materials, and it would be inequitable and unjust, it seems to us, to permit Smith or his personal representative to withhold, at this time, any part of the fund upon which the lien claimants must surely have relied for reimbursement. The fact that the real property itself has proved of but little value upon sale under the purchase-money deeds of trust lends added support to this conclusion. The foundation of equitable estoppel is justice and good conscience. As stated in 2 Pomeroy's Equity Jurisprudence (4th ed., p. 1636, sec. 802) : "Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." To permit of an appropriation by the personal representative of Smith of the $4,090 in dispute would, by reason of the circumstances attending the transaction, work a grievous wrong to the appealing lien claimants having an equity therein and give such personal representative an unconscientious advantage over such lien claimants. Nor do we think this sum of money should become a part of Smith's estate and thus become charged with the claims of general creditors. The court below should have, in our opinion, ordered and directed the securities company to pay this amount into court, to be thereafter disbursed, *pro rata,* among those persons having legally and satisfactorily established their lien claims against the parcels of real property hereinabove referred to.

In announcing our conclusion in this case we are not unmindful of the rule which requires that an estoppel to be available as a defense must be specially pleaded. This rule is not, however, without its exceptions. It has been held, for instance, that the rule is without application where the complaint discloses a state of facts which amount to an equitable estoppel. (*Haynes* v. *Indio Levee District,* 46 Cal.

App. 436, 440 [189 Pac. 475].) The agreed statement of facts upon which the instant case was tried discloses, as we have already shown, certain special circumstances which, in our opinion, give rise to what might well be termed an equitable estoppel. In view of this situation the rule above stated may properly be said to be inapplicable herein.

For the guidance of the court below it is proper to state herein that the nonappealing lien claimants are not in a position to derive any benefit from the reversal in part of the judgment. (*Lake* v. *Superior Court*, 187 Cal. 116, 118–120 [200 Pac. 1041, 1042].) In the cited case it is declared that "an appeal by only a portion of the defendants, however broad in terms the notice of appeal may be, is, in legal effect, an appeal only from a portion of the judgment affecting them, and gives jurisdiction to the appellate court to reverse or modify the judgment only in so far as it affects the interests of the appellants." The judgment in the instant case by separate and numbered paragraphs adversely disposes of the asserted severable rights and interests of the respective lien claimants in and to the sum of money in dispute. It necessarily follows, therefore, that the respective appealing lien claimants could prosecute an appeal only from such portions of the judgment as affect them, and this despite the statement in their notice of appeal that the appeal is "from the whole and from each and every part of that certain judgment given and made herein . . . "

In accordance with the views herein expressed, that part of the judgment appealed from which declares the trust deed executed and delivered to the Anglo-California Trust Company as trustee for the Anglo-California Securities Company to be a first charge or lien upon the real property described therein, is hereby affirmed. That part of the judgment awarding the sum of $4,090, remaining undisbursed in the building loan account, to the plaintiff Mary H. Smith, as administratrix of the estate of Calvin M. Smith, deceased, is reversed, with directions to the court below to proceed, as suggested herein, so as ultimately to cause said sum of $4,090 to be applied in liquidation of the liens of the appealing lien claimants.

Hearing in Bank denied.