[Civ, No. 38375. Second Dist., Div. Two. May 1, 1972.]

SWINERTON & WALBERG CO., Plaintiff and Respondent, v.
UNION BANK, Defendant and Appellant.

## COUNSEL

Loeb & Loeb and Jerome L. Goldberg for Defendant and Appellant.

Hassard, Bonnington, Rogers & Huber and Merrill K. Albert for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—Union Bank (Bank) appeals a portion of a judgment imposing an equitable lien in favor of Swinerton & Walberg Co. (Swinerton) on funds held by Bank in a construction loan disbursement account.

*Facts*

In February 1964 James and Audrey Casey (Casey) contracted with Swinerton, a building contractor, for the construction of a 78-unit apartment building on Casey's property in Redondo Beach at a price of $785,000. To finance construction and related expenses Casey in March 1964 borrowed $892,000 from Bank, signing a promissory note secured in part by a trust deed on the property.

Casey and Bank entered into a building loan agreement pursuant to which the $892,000 loan was deposited with Bank in a construction loan disbursement account. At Bank's request Casey deposited an additional $37,700 in the account to make a total of $929,700. $186,000 was to be disbursed for purposes other than construction, and $3,700 was to be held in the account for unforeseen expenses. The balance of $740,000 was to be disbursed as construction progressed to Swinerton[1] (who was named in the agreement as the contractor), but $74,000 of that amount would be withheld until a title insurance company on completion of construction guaranteed that no mechanics' liens were outstanding against the property. The building loan agreement provided that if Casey should default on any obligation to Bank, the latter could apply funds in the construction loan disbursement account against Casey's obligation, and it recited "that nothing contained in this agreement shall be construed to vest in any contractor . . . any interest in or claim upon the funds so set aside in this agreement." As contractor, Swinerton signed a declaration in the building loan agreement that it accepted the agreements, conditions, and provisions of the loan agreement, and that these would control inconsistent provisions in its building contract with Casey.

Construction began in March 1964 and was completed in January 1965. Casey ordered extras amounting to $5,000, thereby raising the contract price to $790,000. During the construction period Bank disbursed $666,000 to Swinerton.

In March 1965 Casey defaulted on obligations to both Swinerton and Bank, and Swinerton recorded a mechanics' lien for $150,932.93 against Casey's property. On 16 September 1965 Swinerton offered to release its mechanics' lien, the only lien outstanding, if Bank would disburse the withheld amount of $74,000 on deposit in the construction loan account. Bank refused. In November 1966 Bank foreclosed its trust deed on the Casey property, buying in the property on the foreclosure sale for $810,000

---

[1]Swinerton and Casey agreed that $45,000 of the $785,000 construction contract cost would be separately financed.

and thereby wiping out Swinerton's mechanics' lien, a result Swinerton did not challenge.

Bank never sought to press its claim under the building loan agreement to apply undisbursed construction funds to Casey's defaulted obligation to Bank, and $104,472.68 remains undisbursed in the construction loan account. Swinerton instituted the present action against Casey and Bank for breach of contract and for imposition of an equitable lien against funds on deposit in the construction loan account.

*Trial Court's Determination*

The trial court found: Swinerton was induced to construct the apartment building by Casey and Bank; Swinerton was induced to rely on, and did rely on, the construction loan disbursement fund for payment; Swinerton, in signing the building loan agreement, did not intend to give up its rights to an equitable lien against undisbursed construction funds; Swinerton completed the construction called for by its contract in a workmanlike manner, and the reasonable value of construction exceeded $740,000; Bank had no reason to refuse to disburse $74,000 to Swinerton after Swinerton offered to release its mechanics' lien on 16 September 1965.

The trial court concluded that Casey was indebted to Swinerton for $124,000 [$790,000 contract price, less $666,000 construction loan disbursement]; Swinerton had no contractual rights against Bank; Swinerton was entitled to $74,000 plus interest from 16 September 1965 from Bank; and Swinerton's recovery against Bank was to be credited against Casey's debt to Swinerton.

Bank contends (1) as a general contractor Swinerton could not assert an equitable lien upon construction funds, (2) Swinerton waived any claim he might have had to an equitable lien, and (3) pre-judgment interest was improperly imposed on the equitable lien.

*Equitable Lien*

Bank argues that a general contractor may not assert an equitable lien, and it insists that this conclusion is compelled by *Gordon Bldg. Corp. v. Gibraltar Sav. & Loan Assn.*, 247 Cal.App.2d 1, 4, 10 [55 Cal.Rptr. 884]. We disagree. In *Gordon* a general contractor, sued by a subcontractor for money due for labor and materials, cross-complained against a lender, in part to impose an equitable lien on construction loan proceeds held by the lender on the construction project on which the contractor had worked. The lender's demurrer was sustained without leave to amend, and judgment of dismissal was affirmed on appeal, because two allegations essential to the imposition of an equitable lien were missing from the

general contractor's cross-complaint against the lender: an allegation that the general contractor directly supplied labor or materials to the construction project, and an allegation that the general contractor justifiably relied on the construction loan proceeds. Since the general contractor had made "several futile attempts to allege sufficient facts" to state a cause of action, the demurrer was properly sustained without leave to amend.

*Gordon* does state: "It would be a novel theory that the general contractor should accede to the benefit of loan proceeds heretofore considered to constitute a trust for the payment of liens and claims established by subcontractors and materialmen. Indeed, the demonstrated attitude of the law has been to implement the existing statutory scheme protecting subcontractors by methods calculated to forestall the misapplication or diversion of construction funds by the entrepreneurs of the project, including owner, builder, and the general contractor or whatever combinations thereof may exist in an individual case." (247 Cal.App.2d at p. 9.) That language, however, was used to support the court's conclusion that under the circumstances of the case the general contractor's complaint did not state a cause of action based on a *third-party beneficiary theory,* i.e., a contract theory of recovery. Since recovery in the present case is not grounded on contract but rather on equitable considerations arising out of estoppel and unjust enrichment, its disposition is not controlled by the foregoing language from *Gordon.* Significantly, the latter case did not declare that a general contractor, entirely unrelated to the owner and builder, could never assert an equitable lien against construction loan proceeds.

Bank next argues that all cases in which equitable liens have been upheld involve subcontractors and not general contractors, and from this it concludes that a general contractor can never become entitled to an equitable lien against construction loan funds. Yet the fact that all other cases recognizing equitable liens have involved subcontractors, even if true, does not by itself preclude imposition of an equitable lien against construction loan funds on behalf of a general contractor. █ The lender of construction funds stands in the same approximate relationship to a subcontractor as it does to a general contractor who is wholly independent from the borrower. In both instances the position of the lender is that summarized in the following language: "Where the lender has received the benefit of the claimant's performance, and therefore a more valuable security for its note, it is not justified in withholding or appropriating to any other use money originally intended to be used to pay for such performance and relied upon by the claimant in rendering its performance." (*Miller* v. *Mountain View Sav. & Loan Assn.,* 238 Cal.App.2d 644, 661 [48 Cal.Rptr. 278], paraphrasing the court's statement in *Pacific Ready*

*Cut Homes* v. *Title I. & T. Co.,* 216 Cal. 447, 452 [14 P.2d 510].)
Here, Swinerton performed its work and completed the construction of the apartment building (work whose reasonable value exceeded $740,000) but received only $666,000. Bank obtained the benefit of that performance by foreclosing on its trust deed and selling the apartment building for $810,000. It is equally clear that Swinerton was induced by the creation of the building construction loan fund to supply work, labor, and materials for the project and that in rendering its performance it relied on the fund for payment. Indeed, since Bank had acquired a first lien on the property to protect its construction loan, Swinerton could look to little else for security. The only contractual obstacle to Swinerton's right to the undisbursed construction loan funds was the existence of its own mechanics' lien against the property, a lien which on 16 September 1965 it offered to release if Bank would disburse $74,000 from the remaining construction loan funds. Bank refused the offer. Under these circumstances—full performance by the contractor and reliance by the contractor on the fund for payment—we think Swinerton became entitled to the $74,000 withheld in the construction loan disbursement account for payment of construction costs.

There are no statutory impediments to this conclusion, for the events with which we are concerned took place in 1964 and 1965. A 1967 addition to former Code of Civil Procedure section 1190.1, subdivision (n) (now Civ. Code, § 3264) provides: "The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by this article, and no such person may assert any legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of this article."

Bank argues that this provision shows legislative opposition to the imposition of equitable liens against construction funds. We do not read such a broad meaning into that section (see Lefcoe and Schaffer, *Construction Lending and the Equitable Lien,* 40 So.Cal.L.Rev. 439, 459, fn. 4), but in any event that section does not apply retrospectively. The Legislature specifically provided that the addition to former Code of Civil Procedure section 1190.1, subdivision (n) (now Civ. Code, § 3264), "shall not apply to any work of improvement commenced prior to [8 November 1967]." (Stats. 1967, ch. 789, § 4.)

Finally, Bank argues that the equitable lien was designed to aid only those who are entitled to a stop notice but fail to properly perfect it, that

general contractors are not entitled to stop notices (former Code Civ. Proc., § 1190.1, subd. (h), now Civ. Code, § 3159), and that because a general contractor's equitable rights should not exceed his legal rights, a general contractor is not entitled to an equitable lien. ■ Bank's major premise is incorrect: The equitable lien is wholly independent of the statutory mechanics' lien and stop notice remedies (Goulden and Dent, *More on Mechanics' Liens, Stop Notices, and the Like,* 54 Cal. L. Rev. 179, 190; see *Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496, 502 [271 P. 898]), and therefore does not depend on the availability to the claimant of the statutory stop notice remedy.

■ We conclude that in 1965 a general contractor could claim an equitable lien on construction loan proceeds, and that in this case the general contractor became entitled to such a lien.

*Waiver*

■ Bank next contends Swinerton waived any right to an equitable lien by agreeing to accept the building loan agreement between Bank and Casey.

The building loan agreement provided in pertinent part:

"14. Bank is authorized, notwithstanding any provision to the contrary herein, to use said moneys or any portion thereof in or toward the payment or performance of any obligation of Owner either contained herein or contained in said Deed of Trust. If the same are insufficient for the purpose of remedying any default of Owner, including without limiting the generality of the foregoing the obligation of Owner to complete the construction of said Improvements, Owner agrees to pay at once the deficiency and/or to deposit with Bank in accordance with the provisions of paragraph 3 above a sufficient sum to cover such deficiency and should Owner fail so to do, Bank may apply any balance of funds in said Undisbursed Real Estate Loan Account toward the payment or performance of Owner's obligations and at its option Bank may employ workmen and purchase materials to protect or complete said Improvements, in which event expenditures therefore shall be considered an additional loan to Owner, payable on demand, bearing simple interest at the rate of ten (10) percentum per annum. . . .

"19. If any of the following events should occur: (a) If Owner or the contractor of Owner does not proceed continuously with the erection and completion of said Improvements or if work of construction is otherwise discontinued for a period of fifteen (15) days, except as such interruption or delay is excused under the provisions of paragraph 3 above, (b) if any

of the warranties or representations made by Owner herein are or should the same become untrue in any material respect, (c) if Owner should default in the performance of or breach any of the terms, covenants and provisions contained in this Agreement or in any lease agreement in the event the property constitutes a leasehold estate, (d) if Owner should commit an act of bankruptcy or if any relief under the Bankruptcy Act is sought by or against Owner, or if a receiver is appointed to take charge of the assets or affairs of Owner, or if Owner should make an assignment for the benefit of creditors or if Owner should become insolvent, then, and upon the occurrence of each such event the same shall be considered an event of default for the occurrence of which Bank shall be entitled, at its option and without prior demand or presentment and without prior notice to Owner to (i) declare such of the loan proceeds which have been previously disbursed by Bank under the provisions of paragraph 8 above to be due and payable, (ii) terminate any obligation of Bank to disburse the remainder of the loan proceeds under the provisions of said paragraph 8, (iii) proceed as authorized by law to satisfy the indebtedness of Owner to Bank and, in that regard, Bank shall be entitled to all of the rights, privileges and benefits contained in each and every instrument relating to the hypothecation of property, both real and personal, as collateral security for the performance by Owner of the obligations evidenced by said Promissory Note and by this Agreement. . . .

"22. This Agreement is made for the sole protection of Owner and Bank, their successors and assigns, and no other person or persons shall have any right of action hereon.

"23. Owner agrees that nothing contained in this Agreement shall be construed to vest in any contractor or the successors or assigns of any contractor, or any materialman or any laborer, any interest in or claim upon the funds so set aside by this Agreement."

We do not read Paragraphs 14, 22, and 23, as constituting a waiver by Swinerton of its rights to an equitable lien against the proceeds of the construction loan fund. Paragraph 14 relates to obligations of Casey to third persons, not to Bank. Casey's only obligation other than to Bank was to Swinerton. Paragraphs 22 and 23 merely reaffirm what the trial court found, that Swinerton had no contractual rights to the construction loan disbursement fund. Swinerton's claim is for an equitable lien, which has an independent, noncontractual basis.

Paragraph 19 relates to obligations by Casey to Bank, but, as found by the trial court, Bank never sought to exercise a claim under this provision to apply undisbursed construction loan funds to Casey's obligation.

Thus even if Swinerton did waive or subordinate its interest in the construction loan proceeds to Bank, a point we do not decide, Bank still did not perfect any claim to the proceeds.

We conclude, therefore, that Swinerton did not waive its right to impose an equitable lien on the construction loan proceeds.

### Pre-Judgment Interest

■ Finally, Bank contends that the trial court should not have awarded interest from 16 September 1965 on Swinerton's recovery of $74,000 from Bank.

The contention is without merit. Pre-judgment interest may be awarded to the extent that construction loan funds are available. (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.*, 61 Cal.2d 728, 737 [40 Cal.Rptr. 85, 394 P.2d 829]; *McBain* v. *Santa Clara Sav. & Loan Assn.*, 241 Cal.App.2d 829, 846 [51 Cal.Rptr. 78].) Bank's reliance on *Jones* v. *Sacramento Sav. & Loan Assn.*, 248 Cal.App.2d 522, 531 [56 Cal.Rptr. 741], is inapposite, since that case involved the propriety of interest on an equitable lien imposed on land. Here, the trial court found that $104,472.08 remained undisbursed in the construction loan account. The court awarded Swinerton $74,000 plus interest of $25,828.01, for a total of $99,828.01, an amount not in excess of the undisbursed funds, and therefore proper under *A-1 Door, supra.*

We also agree with the trial court that 16 September 1965 was the appropriate date from which to award interest. On that date construction had been completed, no liens except Swinerton's were outstanding against the property, and Swinerton offered to release its lien upon disbursement of $74,000 from the construction loan fund. After that offer, Bank had no justification for refusing to disburse funds set aside for payment to Swinerton.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied May 18, 1972.