[Civ. No. 13765. Fourth Dist., Div. Two. Jan. 13, 1975.]

*BOYD AND LOVESEE LUMBER COMPANY,
Plaintiff and Appellant, v.
WESTERN PACIFIC FINANCIAL CORPORATION,
Defendant and Respondent.

*Reporter's Note: This case was previously entitled "Boyd and Lovesee Lumber Company v. Modular Marketing Corporation."

## COUNSEL

Blumenthal, La Rocca, Grossman & Avis and Alan S. Avis for Plaintiff and Appellant.

Surr & Hellyer and Joe Sax for Defendant and Respondent.

## OPINION

WHYTE, J.*—This is an appeal from a judgment of dismissal as to the defendant Western Pacific Financial Corporation following the sustaining of that defendant's demurrer to plaintiff's complaint without leave to amend. The rights of plaintiff against other named defendants were not affected by this judgment. The first and second causes of action in plaintiff's complaint do not purport to state any cause of action against respondent. Only the third cause of action is herein involved.

The complaint alleges that defendant Modular Marketing Corp. was the owner of certain land in Riverside County. Modular entered into a contract with defendant Fromm as general contractor for the erection of five single family residences on said property. Defendant Fromm ordered framing lumber and roof sheathing from plaintiff which materials were delivered to the aforesaid property.

In order to finance such construction defendant Modular entered into a construction loan agreement with respondent by which respondent agreed to loan for said purpose the sum of $87,500 which funds were to be disbursed in accordance with a construction cost breakdown furnished to respondent by Modular. Said breakdown allotted $2,500 for framing lumber and $1,000 for plywood roof sheathing. The plaintiff further alleges that it was standard business practice of respondent to disburse construction loan funds directly to subcontractors and suppliers upon deposit with respondent of invoices for work performed and materials delivered together with a voucher approved by borrower and that plaintiff relied upon such practice as assurance of payment.

On or about April 5, 1973, plaintiff mailed respondent a preliminary notice under Civil Code section 3097 stating it was furnishing lumber and building materials to the project. Between March 15 and April 15, 1973, the other defendants presented to respondent who paid them three vouchers requesting disbursement among other things of the $3,500 allotted by the construction breakdown to framing lumber and plywood roof sheathing. Plaintiff alleges respondent was negligent in making said disbursements and that it was damaged by such negligence.

Respondent filed a general demurrer which was sustained without leave to amend. A judgment of dismissal followed from which judgment plaintiff filed timely notice of appeal.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

While plaintiff alleged the filing of a preliminary notice under Civil Code section 3097 it did not allege that it filed either a mechanic's lien or a stop notice. The complaint, therefore, does not seek recovery under title 15 of the Civil Code. Plaintiff does not assert that, had leave to amend been allowed, the facts would have permitted averments seeking recovery under said title.

Respondent contends, and the trial court held, that because of the provisions of Civil Code section 3264, the facts alleged do not and cannot be amended to state a cause of action outside title 15. Section 3264, which was in 1969 carried over into the Civil Code from Code of Civil Procedure section 1190.1 subdivision (n) first adopted in 1967, reads as follows: "The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by Chapters 3 (commencing with Section 3156) and 4 (commencing with Section 3179) of this title, and no person may assert any legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters."

██    Plaintiff does not and apparently cannot allege any "direct written contract" between itself and respondent. Hence no recovery can be had on the theory of a contract express or implied.[1]

Plaintiff alleges respondent was negligent. ██    But " '[i]t is an elementary principle that an indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member.' " (*Gill* v. *Mission Sav. & Loan Assn.* (1965) 236 Cal.App.2d 753, 755 [46 Cal.Rptr. 456], quoting from *Routh* v. *Quinn* (1942) 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215].) ██    Here the only duty alleged was one, based upon standard business practice, to disburse the monies in the construction loan fund in a particular manner, i.e., direct to plaintiff. Absent a duty to plaintiff there can be no recovery in tort for negligence.

[1]Actions against those personally liable on contracts for labor or material and the issuance of an attachment in such actions are expressly recognized in Civil Code title 15 by section 3152. This is the basis of *San Diego Wholesale Credit Men's Assn.* v. *Superior Court* (1973) 35 Cal.App.3d 458 [110 Cal.Rptr. 657]; *Rexroth & Rexroth, Inc.* v. *General Cas. Co.* (1966) 242 Cal.App.2d 363 [51 Cal.Rptr. 505]; and *Norman* v. *Berney* (1965) 235 Cal.App.2d 424 [45 Cal.Rptr. 467] relied upon by plaintiff. None of these cases involve the rights and liabilities of persons other than the parties personally responsible on the original contract for labor or materials.

It follows that the negligence claims must be based upon the violation of the duty owed as set forth above, in other words upon the assertion of a "right with respect to such fund." Such falls within the prohibition of section 3264.

Prior to 1967 the facts alleged together with the inferences to be drawn therefrom would have been sufficient to state a cause of action based upon an equitable lien. This is true particularly under the more recent Court of Appeal cases such as *Doud Lumber Co.* v. *Guaranty S. & L. Assn.* (1967) 254 Cal.App.2d 585 [60 Cal.Rptr. 94] and *McBain* v. *Santa Clara Sav. & Loan Assn.* (1966) 241 Cal.App.2d 829 [51 Cal.Rptr. 78]. These cases extended the rule originally established by the Supreme Court in *Smith* v. *Anglo-California Trust Co.* (1928) 205 Cal. 496 [271 P. 898] and *Pacific Ready Cut Homes* v. *Title I. & T. Co.* (1932) 216 Cal. 447 [14 P.2d 510]. The Supreme Court cases established two prerequisites for imposition of an equitable lien: (1) the supplier must have been directly induced by either the owner or the lender to supply labor or materials in reliance on the existence of the fund and (2) the funds to which the lien was applied must represent a true surplus, i.e., the project must have been completed leaving a balance in the construction account. (Lefcoe & Schaffer, *Construction Lending and the Equitable Lien - Postcript* (1967) 40 So.Cal.L.Rev. 439, 459.) Both *Smith* and *Pacific Ready Cut* emphasized the unfairness of leaving the improvers unpaid while there was an unexpended balance in the construction loan fund. This led two writers to conclude that the existence of unjust enrichment is the factor upon which the equitable lien decisions turn. (Goulden & Dent, *More on Mechanics Liens, Stop Notices and the Like* (1966) 54 Cal.L.Rev. 179, 192.) No opinion by the Supreme Court has eliminated the unjust enrichment factor although the Court of Appeal decisions particularly the *Doud Lumber Co.* case appear to do so.

It is with this background that Code of Civil Procedure section 1190.1 subdivision (n) (now Civ. Code, § 3264) was adopted. Most writers feel that under this section the equitable lien is entirely dead. (Marsh, Cal. Mechanics Lien Law Handbook (2d ed. 1972) § 5.27, pp. 167, 170; Review of Selected 1967 Code Legislation (Cont. Ed. Bar) p. 71; Cal. Mechanics' Liens and other Remedies (Cont. Ed. Bar) pp. 10-11.) On the other hand Lefcoe and Schaffer feel there is an historically defensible argument that the section was intended to abolish only the more recent judicial extensions of the equitable lien leaving the possibility that a lien may still be imposed to prevent unjust enrichment

as described in *Smith* and *Pacific Ready Cut.* (See 40 So.Cal.L.Rev. p. 459.)

Only two Courts of Appeal have considered the effect of section 3264. The opinion in one of these cases was vacated by the Supreme Court by granting a hearing apparently on other grounds. *Swinerton & Walberg Co. v. Union Bank* (1972) 25 Cal.App.3d 259 [101 Cal.Rptr. 665, 54 A.L.R.3d 839] merely holds that the section does not apply retroactively and hence did not apply to funds remaining from a project completed in 1965. The court, however, expressed the thought that the section might not abolish all equitable liens and cited Lefcoe and Schaffer. In *Connolly Development, Inc. v. Superior Court* (Cal.App. 5-2057) (hg. by the Supreme Court granted Nov. 13, 1974) a case involving the constitutionality of the law involving bonded stop notices the court in a footnote said, "the enactment of section 3264 [Civil Code] abolished any theory of equitable lien or trust fund."

We feel with Mr. Marsh that the death of the equitable lien lends some stability to the construction and lending industries. (Marsh, Cal. Mechanics Lien Law Handbook, *supra,* p. 170.) A fair line is drawn between the contractors, subcontractors and materialmen on the one hand and the construction lenders on the other. The former at least have remedies by mechanics lien against the property, unbonded stop notice[2] against the owner, and action upon the contract against the person or persons personally ordering the labor or material. The latter are relieved of the expense and risk of policing the ultimate distribution of construction funds and can concentrate on their primary duty of providing construction loans at lesser expense to the borrower and ultimately to the consuming public. ■ Because of these considerations we hold that section 3264 abolishes all theories of equitable liens or trust funds.

---

[2]There may also be the remedy by bonded stop notice against both the owner and the construction lender. The constitutionality of the code provision setting up this remedy has been questioned. (Note, *California's Private Stop Notice Law: Due Process Requirements* (1974) 25 Hastings L.J. 1043.) The matter is now before the Supreme Court in *Connolly Development, Inc. v. Superior Court.* However, even if the provisions for bonded stop notices are eventually held invalid such a holding would not leave materialmen and subcontractors without adequate protection. The fact that most states provide no stop notice remedy and that those that do sharply limit its effectiveness indicates there is no danger to the public or to creditors sufficient to require the summary taking of property which may result when a bonded stop notice claimant freezes money in the construction fund. (Note, *supra,* 25 Hastings L.J. at p. 1059.)

Even if the theory of Lefcoe and Schaffer is adopted and equitable liens are allowed to wipe out windfall profits to either lender or borrower, the result in this case is the same. No cause of action is stated. There is no allegation of unjust enrichment. It does not appear that there was enough in the construction loan to even complete the buildings let alone leave a surplus to apply to reduction of the loan or for delivery to the borrower. There is a specific allegation that the lender paid on vouchers for the very material for which plaintiff now seeks recovery. The respondent lender could not be enriched by the misapplication or diversion of these funds by other persons.

The trial court was correct in sustaining the demurrer and the judgment is affirmed.

Tamura, Acting P. J., and Kerrigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 12, 1975.