PANKOW CONSTRUCTION CO., a
California Corporation,
Plaintiff-Appellant,

v.

ADVANCE MORTGAGE CORPORA-
TION, a Delaware Corporation,
Defendant-Appellee,

v.

PACHECO VILLAGE PROPERTIES, a
partnership, and Leo S. Wou, Third-
Party Defendants-Appellees.

No. 76–3730.

United States Court of Appeals,
Ninth Circuit.

May 13, 1980.

Peter V. Shackter, Bohnert, McCarthy, Flowers, Roberts & Damir, San Francisco, Cal., for plaintiff-appellant.

Jan T. Chilton, Severson, Werson, Berke & Melchior, San Francisco, Cal., for defendant-appellee.

Before BROWNING and CHOY, Circuit Judges, and CHRISTENSEN,* District Judge.

BROWNING, Circuit Judge:

This is an action against a mortgage lender (Advance), brought by a general contractor (Pankow) to recover the balance allegedly due under a contract between Pankow and a construction project developer (Pacheco). The district court denied recovery. We affirm.

In the spring of 1972, Pacheco embarked upon a plan to build a residential apartment complex in Novato, California. After obtaining a commitment from HUD to insure the mortgage loan under section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715l(d)(4), Pacheco entered into a Building Loan Agreement with Advance and a Construction Contract with Pankow.

In January 1974, Pacheco defaulted on interest payments due Advance, allegedly because of Pankow's construction delays. Advance then ceased disbursements under the Building Loan Agreement, leaving Pankow partially unpaid. Negotiations among Pacheco, Advance and Pankow for an overall settlement were unsuccessful. However, Pacheco and Advance agreed upon a course of action. Advance disbursed $277,139 to Pacheco as a final loan advance. Pacheco simultaneously delivered a cashier's check for $251,297 to Advance. Advance applied $193,998 of this amount against interest due under the Building Loan Agreement (thus curing Pacheco's default), and paid the balance to the various government entities involved in providing insurance for the mortgage. Since the project was by then complete and the loan thus reinstated, HUD allowed the project to go to "final closing." Advance then assigned the loan to the Government National Mortgage Association (GNMA). No claim was made on the mortgage insurance and no assignment of the note and mortgage was made to HUD.

Pankow sought to recover from Advance the balance due under the Construction Contract on the theory that Pankow was a third party beneficiary of the Building Loan Agreement between Advance and Pacheco, and that as a fully performing contractor, Pankow was entitled to an equitable lien on the construction loan funds. The district court granted summary judgment for Advance on the ground that third party beneficiary and equitable lien claims against funds for payment of construction costs are barred by California Civil Code § 3264.

Pankow then sought to amend its complaint to add four new theories of recovery: that Advance had wrongfully induced Pacheco to breach the Construction Contract;

---

* Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

that Advance was unjustly enriched by Pankow's uncompensated performance; that the exchange of funds between Advance and Pacheco constituted a fraudulent conveyance; and that Advance had failed to marshal assets. The district court dismissed these proposed amendments, holding they did not state grounds upon which relief could be granted under California law.

## I

Pankow first contends that under a federal common law rule, the general contractor on a housing project financed with federally-insured mortgage funds may assert a claim against the mortgage lender on third party beneficiary and equitable lien theories.[1] Pankow argues that the district court erred in applying a contrary state law rule.[2]

 It is sometimes appropriate to resolve a particular issue arising in a diversity case[3] on the basis of a federal rather than a state rule of law. *Miree v. DeKalb County*, 433 U.S. 25, 29, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977).[4] Application of a federal rule is appropriate "where a uniform national rule is necessary to further the interests of the Federal Government," *ibid.,* citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838

(1943), or where there is a "significant conflict between some federal policy or interest and the use of state law," *id.* at 31, 97 S.Ct. at 2495, *quoting Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). *See also Bank of America v. Parnell*, 352 U.S. 29, 33–34, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956). State rules will not be applied "to thwart the purposes of statutes of the United States." *Sola Electric Co. v. Jefferson Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942).

In this case, there is no compelling need for a uniform federal rule, either with respect to the federal mortgage insurance program generally or with respect to the particular issues before us. No court has perceived a need for uniform federal common law rules to govern all facets of government lending programs.[5] It is evident from the face of the National Housing Act and its implementing regulations that Congress intended state law to apply to some aspects of these programs.[6] Nor is there any apparent need for a uniform rule regarding a contractor's remedies against the mortgage lender. No showing has been made that a uniform rule would ease HUD's administrative burdens. And since disputes between the contractor and the mortgage lender over loan proceeds are wholly between private parties, a uniform

---

**1.** Pankow relies on cases such as *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370 (D.C. Cir. 1976), and *Travelers Indemnity Co. v. First Nat'l State Bank*, 328 F.Supp. 208 (D.N.J. 1971). *See also S. S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28 (2d Cir. 1979); *Spring Constr. Co. v. Harris*, 562 F.2d 933 (4th Cir. 1977).

**2.** Pankow also contends that the district court erred in deciding the state rule was contrary to the federal rule. *See infra.*

**3.** Advance is incorporated in Delaware and has its principal place of business in Michigan. Pankow is a California corporation. Since jurisdiction is established by diversity of citizenship, 28 U.S.C. § 1332, we need not decide whether jurisdiction existed on any other basis.

**4.** *See* Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Deci-

sion, 105 U.Pa.L.Rev. 797, 798–800 (1957); Note, Adopting State Law as the Federal Rule of Decision: A Proposed Test, 43 U.Chi.L.Rev. 823, 824–25 (1976).

**5.** *See, e. g., United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 729, 99 S.Ct. 1448, 1459, 59 L.Ed.2d 711 (1979); *United States v. Yazell,* 382 U.S. 341, 357, 86 S.Ct. 500, 509, 15 L.Ed.2d 404 (1966); *United States v. MacKenzie,* 510 F.2d 39, 41–42 (9th Cir. 1975); *Bumb v. United States*, 276 F.2d 729, 738 (9th Cir. 1960).

**6.** *See, e. g.,* 12 U.S.C. §§ 1707(a), 1715*l*(d)(2); 24 C.F.R. §§ 203.251(d), 203.355(c), (d), 221.5, 221.511(a), 221.563(a)(4); *see also* Note, State Statutory Redemption Rights and the Federal Housing Administration: Reconciliation of Real and Illusory Conflicts, 49 B.U.L.Rev. 717, 724, 731 (1969).

federal rule is not required to protect the financial interests of the United States.[7]

Pankow argues that even though there may be no need for uniformity *per se*, the California rule should be rejected because it interferes with the purposes of section 221 of the National Housing Act. We disagree. The purposes of the federal statute would be furthered rather than frustrated by application of the California rule.

Section 221 of the National Housing Act was designed "to assist private industry in providing housing for low and moderate income families and displaced families." 12 U.S.C. § 1715*l*(a). Congress sought to accomplish this purpose by encouraging private investment in the construction of such housing. Government insurance was provided to guarantee repayment of the mortgage loan if the project owner defaulted. Investors were placed virtually in a "no risk" position.

Section 3264 of California Civil Code[8] was also designed to protect investors in construction projects. Enacted as part of California's comprehensive Mechanics' Lien Law, Cal.Civ.Code § 3082 *et seq.*, this section was drafted in response to mortgage lender protests against state court decisions holding that even after completion of construction, a lien claimant may have an equity interest in the building loan account that is prior and superior to the rights of both the lender and the builder. *See* M. Marsh, California Mechanics' Lien Law Handbook, § 5.27 at 182–83 (3d ed. 1979). The Califor-

nia legislature's solution was to limit the rights that might be asserted "with respect to any fund for payment of construction costs." Section 3264 provides that claims upon construction loan funds by persons furnishing services or material are confined to those based on statutory mechanics' lien and stop notice procedures, and that "no person may assert any [other] legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund."

In *Boyd & Lovesee Lumber Co. v. Western Pacific Financial Corp.*, 44 Cal.App.3d 460, 118 Cal.Rptr. 699 (1975), the manner in which section 3264 accommodated the interests of the various claimants and the mortgage lender is described as follows:

> The former at least have remedies by mechanics lien against the property, unbonded stop notice against the owner, and action upon the contract against the person or persons personally ordering the labor or material. The latter are relieved of the expense and risk of policing the ultimate distribution of construction funds and can concentrate on their primary duty of providing construction loans at lesser expense to the borrower and ultimately to the consuming public.

44 Cal.App.3d at 465, 118 Cal.Rptr. at 702. "Because of these considerations," the court concluded, "we hold that section 3264 abolishes all theories of equitable liens or trust funds." *Ibid.*[9]

---

7. *Compare Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), *and Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d 381, 390 (10th Cir. 1977), *with Miree v. DeKalb County*, 433 U.S. 25, 29, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977), *and Bank of America v. Parnell*, 352 U.S. 29, 33, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956). *See also Peter Kiewit Sons' Co. v. Summit Constr. Co.*, 422 F.2d 242, 260 (8th Cir. 1969); *Sam Macri & Sons, Inc. v. United States*, 313 F.2d 119, 124 n.1 (9th Cir. 1963). The noninvolvement of the United States in this case may have a determinative bearing upon the need for a federal common law rule, and suggests a significant distinction between this case and those relied upon by Pankow. *See* note 1.

8. This code section provides:

> The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by Chapters 3 (commencing with Section 3156) and 4 (commencing with Section 3179) of this title, and no person may assert any legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters.

9. The Supreme Court of California cited *Boyd & Lovesee* approvingly in *Connolly Development, Inc. v. Superior Court*, 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637 (1976), stating: "The enactment of Civil Code section 3264 in

By limiting the remedies that contractors, subcontractors, materialmen and laborers have against mortgage lenders on construction projects, the California statute encourages private investment in such projects. Thus, the California statute furthers the same purpose as the mortgage insurance program of the National Housing Act.

Pankow argues, however, that by limiting a contractor's remedies against the mortgage lender, the California rule discourages contractors from participating in housing projects and thus frustrates the ultimate purpose of the National Housing Act, particularly because HUD's standard construction contract, used in section 221(d)(4) projects, requires the contractor to waive its right to assert any mechanics' liens.

■ The argument is not without weight. It was one of the stated objectives of the National Housing Act to encourage "a prosperous and efficient construction industry." S.Rep.No.281, 87th Cong., 1st Sess., (1961) *reprinted in* [1961] U.S.Code Cong. & Admin.News, pp. 1923, 1924. Moreover, it is obvious that participation by construction contractors as well as mortgage lenders is essential to the success of National Housing Act programs. Nonetheless, we believe the California rule limiting the contractors' remedies should be applied in suits involving projects insured under the Act. There are a number of reasons for this conclusion.

It is indisputable that the California rule will reinforce the principal means relied upon by Congress to foster housing construction—the encouragement of investment. It is far less certain that the rule will deter construction contractors from undertaking housing projects insured under the National Housing Act.

There is no evidence that the rule has diminished the interest of contractors in participating in California housing construction projects not insured under the Act. The requirement that mechanics' liens be waived is not a significant factor—under California law the mechanics' lien is an ineffective remedy.[10] Moreover, under California law the contractor has other more effective remedies. He can protect himself by securing a payment bond. *See* Cal.Civ. Code §§ 3096, 3226. He also retains the most generally utilized remedy—a suit against the owner on the construction contract. Pankow responds that owners of HUD projects are often undercapitalized. But we have no basis for such an assumption. HUD regulations requiring mortgagors to meet specific financial requirements before a federal insurance commitment will be made are designed to ensure that most project owners will be fiscally secure.[11]

California Civil Code section 3264 is part of a comprehensive state legislative scheme governing the relationships among the parties to construction projects. Such projects involve long-term commitments and require long-range planning. Predictability and stability in the rules governing the relation-

---

1969 abolished the nonstatutory equitable lien." 17 Cal.3d at 827 n.25, 132 Cal.Rptr. at 493 n.25, 553 P.2d at 653 n.25.

10. In California, a mortgage or deed of trust recorded prior to the commencement of a contractor's work has priority over a mechanics' lien arising out of that work. *See Connolly Development, Inc. v. Superior Court*, 17 Cal.3d 803, 808, 132 Cal.Rptr. 477, 553 P.2d 637 (1976); Cal.Civ.Code §§ 3134, 3137; M. Marsh, California Mechanics' Lien Law Handbook, § 4.153, at 132 (3d ed. 1979). Since the lender ordinarily records the mortgage or deed of trust before construction begins, *see* 24 C.F.R. §§ 203.32, 202.353, the mechanics' lien "can be wiped out by the foreclosure of a lender's trust deed." *Connolly, supra,* 17 Cal.3d at 809, 132 Cal.Rptr. at 481, 553 P.2d 637, 641. *See also Swinerton & Walberg Co. v. Union Bank*, 25

Cal.App.3d 259, 262–63, 101 Cal.Rptr. 665 (1972); *McBain v. Santa Clara Savings & Loan Ass'n*, 241 Cal.App.2d 829, 836, 51 Cal.Rptr. 78 (1966); *Miller v. Mountain View Savings & Loan Ass'n*, 238 Cal.App.2d 644, 647, 48 Cal. Rptr. 278 (1965); P. Gutierrez, California Civil Code Section 3264 and the Ghost of the Equitable Lien, 30 Hast.L.J. 493, 495 (1979); Lefcoe & Schaffer, Construction Lending and the Equitable Lien, 40 S.Cal.L.Rev. 439, 440–41 (1967); Osborn, Nelson & Whitman, Real Estate Finance Law, § 12.6, at 749 (West 1979).

11. *See, e. g.,* 24 C.F.R. §§ 203.33, 203.34, 221.-50, 221.510, 221.531, 221.540, 221.542; *see also* S.Rep.No.892, 81st Cong., 2d Sess. (1950), *reprinted in* [1950] U.S.Code Cong. & Admin. News, pp. 2021, 2101.

ships of participants in such projects is important. The formulation of such rules is primarily a matter of local concern generally left to the state.

On balance, the possibility that application of the California rule might adversely affect accomplishment of the purposes of the National Housing Act is too speculative and remote to justify displacing state commercial law in this area of great local concern.[12]

■ Pankow argues that although section 3264 bars recovery on equitable lien and trust theories, it does not bar recovery by a third party beneficiary. We disagree. By definition a third party beneficiary does not rely upon a right "created by direct written contract." *See* Cal.Civ.Code § 3264.

■ There is no greater merit in Pankow's alternative argument that Pankow *has* a written contract with Advance because the Construction Contract and the Building Loan Agreement are "integrated." *See* Cal.Civ.Code § 1642. As the district court said, "joint execution would require the court to construe the two agreements in light of one another; it would not merge them into a single written contract."

## II

■ Pankow makes no argument that a federal common law rule should be formulated with respect to its remaining claims for relief. Concededly, state law governs. In diversity cases we defer to the district court's interpretation of the law of the state in which the district court sits. *Holcomb Constr. Co. v. Armstrong*, 590 F.2d 811, 813 (9th Cir. 1979); *Smith v. Sturm,*

*Ruger & Co., Inc.*, 524 F.2d 776, 778 (9th Cir. 1975). The district court's determination will be accepted on review unless shown to be "clearly wrong." *Scandinavian Airlines System v. United Aircraft Corp.*, 601 F.2d 425, 427 (9th Cir. 1979); *American Timber and Trading Co. v. First Nat'l Bank*, 511 F.2d 980, 983 (9th Cir. 1973). The district court's rulings as to California law are not clearly wrong.

■ *Inducing Breach of Contract.* Pankow alleges that Advance induced Pacheco to breach its construction contract with Pankow by applying the funds received in the final loan disbursement to its debt to Advance rather than to its debt to Pankow. If Advance induced Pacheco to breach the construction contract, it did so to secure performance on its own contract. As the California Supreme Court said in *Imperial Ice Co. v. Rossier*, 18 Cal.2d 33, 37, 112 P.2d 631, 633 (1941), "if two parties have separate contracts with a third, each may resort to any legitimate means at his disposal to secure performance of his contract even though the necessary result will be to cause a breach of the other contract."

*Unjust Enrichment.* Pankow calculates that by assigning the note and deed of trust to GNMA, Advance received at least $160,-709.81 more than it had disbursed to Pacheco in loan advances. Pankow alleges that Advance was unjustly enriched because it was paid for a completed construction project even though Pankow was not paid for having completed the project.

■ California Civil Code § 3264 bars recovery on a theory of unjust enrichment, for unjust enrichment is merely an element of a claim for an equitable lien.[13] Pankow

**12.** *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 739–40, 99 S.Ct. 1448, 1464–65, 59 L.Ed.2d 711 (1979); *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 70–71, 86 S.Ct. 1301, 1305, 16 L.Ed.2d 369 (1966); *United States v. Yazell*, 382 U.S. 341, 352–53, 86 S.Ct. 500, 506–07, 15 L.Ed.2d 404 (1966); *Bank of America v. Parnell*, 352 U.S. 29, 33–34, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956); *United States v. MacKenzie*, 510 F.2d 39, 41–42 (9th Cir. 1975); *Bumb v. United States*, 276 F.2d 729, 736–38 (9th Cir. 1960). *Compare United States v. Haddon Haciendas Co.*, 541 F.2d 777, 783–85 (9th

Cir. 1976). *See also* Note, Adopting State Law as the Federal Rule of Decision: A Proposed Test, 43 U.Chi.L.Rev. 823, 842–43 (1976); Note, State Statutory Redemption Rights and the Federal Housing Administration: Reconciliation of Real and Illusory Conflicts, 49 B.U.L. Rev. 717, 733–34 (1969).

**13.** *See Boyd & Lovesee, supra*, 44 Cal.App.3d at 464, 466, 118 Cal.Rptr. 699; Goulden & Dent, More on Mechanics Liens, Stop Notices and the Like, 54 Cal.L.Rev. 179, 192 (1966).

argues that section 3264 is inapplicable because the payment Pankow received from GNMA was not part of "any fund for payment of construction costs." But section 3264 refers to rights asserted "with respect to" funds for payment of construction costs. Pankow's claim must be construed as such a claim. If it were not, a mortgage lender would be placed in the anomalous position of being protected against lien claimants so long as it retained the loan obligations and related security, yet liable if it transferred its rights for valid consideration to a third party. Pankow suggests no rational basis for such a distinction.

█ *Fraudulent Conveyance.* Advance did not exercise its right to call on letters of credit totaling more than $128,000 that Pacheco provided as protection against default. Instead, as earlier noted, Advance disbursed the final loan advance of $277,-139.26 to Pacheco and Pacheco simultaneously paid Advance $251,297.56 to cure its default. Pankow alleges that these transactions were made with the intent to defraud creditors, including Pankow, and thus constituted a fraudulent conveyance. *See* Cal.Civ.Code § 3439.07. But the only fraud alleged is that Advance caused the loan proceeds to be applied to the debt due Advance rather than the debt due Pankow. As we have seen, under California law such conduct, without more, is not fraudulent. *See also* Cal.Civ.Code § 3432.

█ *Marshaling Assets.* Pankow alleges that Advance had an equitable duty to use the letters of credit rather than the proceeds from the final loan disbursement to cure Pacheco's default. If a creditor can reach two funds held by a debtor, and another creditor can reach only one, the former may be required to look first to the fund that cannot be reached by the latter, "so far as it can be done without impairing the right of the former to complete satisfac-tion." Cal.Civ.Code § 3433. Pankow did not allege that Advance's right to complete satisfaction would be unimpaired by marshaling; on the contrary, Pankow alleged that Advance acted "for its own benefit."

*Equitable Lien.* Pankow seeks to impose an equitable lien on the letters of credit. To avoid the bar of California Civil Code § 3264, it alleges that the letters of credit "did not constitute any fund for payment of construction costs either in the lay sense of the word or within the meaning of Section 3264 of the Civil Code of the State of California."

On its face Pankow's pleading bars relief. California courts and commentators agree that even before the enactment of section 3264, a contractor or subcontractor could obtain an equitable lien only against the fund from which payment was promised.[14]

█ The claim fails for a second reason. A necessary element of any claim for equitable lien is reliance. Pankow represented to the district court that it did not learn of the existence of the letters of credit until April 20, 1976. Pankow had executed the construction contract four years earlier. Pankow can hardly contend it relied upon the letters of credit in executing a contract four years before it learned of their existence.

AFFIRMED.

---

14. *See, e. g., Smith v. Anglo California Trust Co.,* 205 Cal. 496, 502–03, 271 P. 898 (1928); *Boyd & Lovesee, supra,* 44 Cal.App.3d at 464, 118 Cal.Rptr. 699; *Swinerton & Walberg Co. v. Union Bank,* 25 Cal.App.3d 259, 264–65, 101 Cal.Rptr. 665 (1972); *Miller v. Mountain View Savings & Loan Ass'n,* 238 Cal.App.2d 644, 661, 48 Cal.Rptr. 278 (1965); *Gutierrez, supra,* 30 Hast.L.J. at 505; *Goulden and Dent, supra,* 54 Cal.L.Rev. at 190; Note, Security Transactions: Mechanics' Equitable Lien on Construction Loan Funds, 5 Santa Clara Lawyer 69, 74 (1964).